### POTTER et al. v. PHENIX INS. CO.

(Circuit Court, W. D. Missouri. May 21, 1894.)

1. FIRE INSURANCE—VERBAL CONTRACT—ISSUANCE OF POLICY.
    The issuance of a policy is not necessary to a valid contract of insurance; and if a verbal contract to issue is made with an authorized agent of the company, without mentioning any date for the insurance to take effect, the risk commences immediately.

2. SAME—WAIVER OF IMMEDIATE PAYMENT OF PREMIUMS—CUSTOM.
    A custom existing between the agents of the parties, respectively, of collecting premiums on the 1st of each month for insurance effected during the previous month, operates as a waiver of immediate payment, when no special demand is made.

3. INTERPRETATION OF CONTRACT—WORDS USED IN SPECIAL SENSE—CUSTOM.
    Plain, ordinary, unambiguous words used in a conversation, by which one party claims that a contract was effected, must, as a general rule, be applied according to their ordinary signification; and if it is claimed that they had acquired a special and technical meaning in the particular locality, and among the class of business men concerned, this fact must be established by a preponderance of the evidence, and it must further be made to appear the person using them understood, and intended to use them in, the technical sense. But the fact of his knowledge may be presumed from the generality of the understanding among men engaged in the same business.

4. SAME—EVIDENCE—SUBSEQUENT CONDUCT AND STATEMENTS.
    Statements and conduct of the parties subsequent to a conversation during which it is claimed that a contract was made are competent only as they tend to show what was their real understanding as to that transaction, and not for the purpose of controlling or in any way changing the effect of the conversation.

5. FIRE INSURANCE—AUTHORITY OF AGENTS—PRESUMPTIONS.
    When an insurance company appoints an agent in a large city, and sends a commission to him to solicit applications, the public is warranted, in the absence of any notice of limitations on his authority, in assuming that he is clothed with power to receive and act on applications, and bind the company.

6. SAME.
    An agent doing business in Kansas City, Mo., was asked to insure property located in the state of Kansas. It is the statutory policy of Kansas to require foreign companies desiring to do business in the state to have

established agents therein, who must comply with certain conditions, and to prevent other agents from taking any insurance there. The company whose agent received the application in Kansas City had an established agent in Kansas, which fact was known to both parties. *Held* that, if the applicant knew of the statutory policy of Kansas, there could be no presumption in his favor that the agent was authorized to insure property in that state.

This was an action by Anna Potter and others against the Phenix Insurance Company to recover under an alleged contract of fire insurance.

Warner, Dean, Gibson & McLeod and I. J. Ketchum, for plaintiffs. Karnes, Holmes & Krauthoff, for defendant.

PHILIPS, District Judge (charging jury). The court will first give you in charge some instructions which have been conceded to the parties in the case, that they may be gotten out of the court's way before it proceeds to the further charge in the case. On behalf of the plaintiff the court concedes these declarations of law:

"The court instructs the jury that the plaintiff in this case seeks to recover upon a contract of insurance, no policy having been issued to her by the defendant. The issuance of a policy is not necessary to render a contract of insurance valid. It may be effected by a verbal agreement between the parties, and if you believe from the evidence that the agents of defendant on the 26th day of August, 1892, entered into a parol agreement with the agents of the plaintiff for the insurance of her dwelling house in the sum of $2,500, then such agreement took effect immediately, although you may further believe from the evidence that no time was mentioned in which it was to take effect; and, if you find that such agreement was entered into, then it was the duty of the defendant to deliver to the plaintiff the policy of writing in the usual form issued by it, and that such verbal agreement remained in full force, although no policy was delivered."

The court then adds to this instruction, "provided the jury find from the evidence that said agents had authority to make such contract."

"The court instructs the jury that if you believe from the evidence that one Van Guilder, a member of the firm of Walter J. Bales & Co., while acting as the agent of the plaintiff Mrs. Anna Potter, went to the office of Hunter & Whitaker, the agents of the defendant, the Phenix Insurance Company, and then and there informed Mr. Whitaker, one of the defendant's agents, of the property of the plaintiff described in the petition, on which he desired to secure insurance, and at that time gave the amount of insurance required, and if you further believe that the rate of premium was then and there agreed upon for insuring plaintiff's property in the defendant's company, and that Whitaker, the agent of defendant, then and there said he 'would try it on in the Phenix,' and if the jury find from the evidence that such words were the customary words used among insurance agents in Kansas City, Mo., to express an acceptance of the application for insurance, and that the plaintiff's agents, with the consent of the defendant, left the description of the property to be insured with instructions as to the delivery of the policy of insurance when written, the court instructs the jury that this constituted a contract of insurance of the plaintiff's property, to take effect from 12 o'clock noon of the day that such contract was made."

The court observes, for your consideration in that connection, that his recollection of the evidence is that nothing was said in

the interview between Whitaker and Van Guilder with respect to the delivery of the policy of insurance when written. That is a matter, however, for the jury.

"When the interpretation of words constituting a contract depend upon the sense in which they are used in view of the subject to which they relate, the relation of the parties, and the surrounding circumstances properly applicable to it, then the intention of the parties becomes a matter of inquiry for the jury, and the interpretation of the language is a question for your determination under the restrictions and modifications given you by the court. The rule of interpretation in such cases is that when two interpretations, equally fair, may be given to the words used, that which gives the greater indemnity shall prevail. The words used by the insurer to the insured will be deemed to contain, not only all the language expressed, but all that can be fairly deducible therefrom, in the light of the circumstances under which they were made.

"The court instructs the jury that although no premium was paid in this case, or tendered, before the destruction of plaintiff's property by fire, yet if you should further find from the evidence that it was the custom between the agents of the defendant and Walter J. Bales & Co., acting as the agents of the plaintiff, to collect premiums from each other on the 1st of each month for insurance placed the preceding month, then this constituted a waiver of the payment or tender of premium, unless you shall further believe from the evidence that the agents of defendant demanded such premium.

"If you find for the plaintiff, you will assess her damages at $2,500, with six per cent. interest thereon from the 1st day of December, 1892, and the form of your verdict, if you so find, will be, 'We, the jury, find the issues for the plaintiff Anna Potter, and assess her damages at $——.'"

## On the part of the defendant:

"Before the jury can find for the plaintiff they must believe that Whitaker was the agent of the defendant, authorized to insure property in the state of Kansas, and that on August 26, 1892, as such agent, he entered into a contract by which he agreed that the property of plaintiff should be insured from that date.

"The court instructs the jury that the burden of proof is on the plaintiff to show—First, that Whitaker was authorized to bind the defendant by entering into a contract of insurance; and, second, that as such agent he did make such a contract,—and that it is not sufficient for plaintiff to show that the insuring of plaintiff's property was considered by Whitaker, but you must further believe and find that the minds of both Van Guilder and Whitaker agreed that from that date the property should stand insured.

"If the jury believe that Whitaker received the proposition from Van Guilder to insure said property, and in doing so stated that he could not insure the same from his office, but that he would submit it to G. A. Bailey, agent for the defendant in the state of Kansas, then this constituted no contract of insurance, so as to bind the defendant, and your verdict will be for the defendant.

"Any knowledge possessed by Van Guilder at the time of the alleged agency for her will affect the plaintiff to the same extent as if she had possessed it herself."

Gentlemen of the jury, you doubtless have observed from the pleadings and from the evidence and arguments in this case that the single and decisive question for your determination is whether or not on the 26th day of August, 1892, a contract of insurance was entered into between Whitaker, representing the defendant company, and the witness Van Guilder, representing the plaintiff in this case. The determination of that question turns and depends entirely upon the construction to be placed upon the interview that occurred between the two parties on the 26th day of August, 1892. That conversation is the predicate, the basis,

or sole foundation for the imputed contract in this case. What transpired there, what the real conversation was between the parties, you are the sole judges of that question of fact, and are at liberty to draw your own conclusions and inferences. It is the province of the court to direct your attention to some of the salient features in the case, and the law as applicable thereto.

There seems to be little dispute or controversy between the contending parties here that in the course of, or at some point in, the interview that occurred between Van Guilder and Whitaker on that day, the expression was used by the agent Whitaker, "I will try it on in the Phenix," and the question is what construction is to be applied to those words? The statute of this state (section 6570), among its rules for the construction of statutes, says:

"Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

So the general rule of the common law is that words are to be considered and understood according to their usual and ordinary import, in their common acceptation among men in the community. So where the words employed in a conversation between two persons are plain, ordinary words, without any ambiguity about them, they must, as a general rule, speak for themselves, and the jury are left to consider and apply them according to their ordinary signification. The law recognizes an exception to this rule, as where certain terms and phrases acquire a technical or a particular meaning among certain trades, professions, or special classes of business men, and they are so employed in such technical sense by and among such classes of men, then such technical or special import and meaning may be imputed to them; but before such special or technical meaning can thus be applied to words and terms, which ordinarily would not attach to them, the jury must find and believe from the evidence that such words and phrases as "I will try it on," "I will try it on in the Phenix," as applied to insurance companies, had acquired a special meaning and import among insurance agents at Kansas City at the time in question. Nor would this alone be sufficient to bind the defendant company in this instance, but the evidence must go further, and satisfy you that such special or technical purport of the language used was known to and understood by Whitaker, defendant's agent, at the time he was employed by it, and that fact you would have to ascertain from the evidence in the case as to what his knowledge was, or from the generality of the understanding of such meaning, as being generally known, and thereby create a presumption that what was generally known to others might be known to a particular individual. If he was ignorant of any such usage, or technical or special significance to the words in question, and did not intend to use them in that particular sense, then it is not sufficient to bind the defendant company that Van Guilder may or did so understand them in such technical sense. The language, "I will try it on in the Phenix," in their grammatical sense,

would seem to imply a future act. "I will try it on in the Phenix," —a thing to be tested, experimentally ascertained, as if he would see what the Phenix Company would say and do about it, and the like. And this is a matter for the jury,—for your own judgment, common sense, and observation. And if the words, in their ordinary sense, do not imply what the plaintiff contends for, then the burden of proof devolves upon the plaintiff to satisfy you by a preponderance of evidence that such expression had at the time and place acquired generally among insurance agents at Kansas City the special significance contended for on the part of the plaintiff. And the jury should be careful, in the consideration of this question, to distinguish between the statement of some of the witnesses as to how he might or would have understood such language, and the fact as to whether or not it had acquired the special meaning generally among insurance agents, for the understanding of one man, or a few men out of a large number of men, may not make a usage or custom or general understanding. Again, gentlemen, in construing the particular language in question, you should consider it in its context, in its connection with other conversation between the parties, if any had, at the same time, with all the facts and circumstances in evidence. If, for instance, at the time or in connection with the words, "I will try it on in the Phenix," the attention of Whitaker and Van Guilder was called to the fact by the witness Miss Holmes that the defendant company had hitherto declined to take a risk upon that property, and Whitaker thereat said in substance that he would write that evening, and refer the matter to Bailey, the general agent in Kansas, then it is for you to say whether it is reasonable or presumable to infer from the whole conversation that Whitaker intended to be understood, or that Van Guilder could have reasonably understood him to intend, to make a binding contract for the application prior to the action on the risk by Mr. Bailey.

The real issue in this case, as already stated to you, gentlemen of the jury, is, was there a contract made on the 26th day of August, 1892, by which the defendant became bound from that day for any loss that might arise after that time, unless notified that the risk was not accepted by the company? Such contract is to be found, alone, if found, from what transpired in that interview between Van Guilder and Whitaker; and if you cannot find such contract in that conversation, taking it as a whole, it never existed, and you should in that event return a verdict for the defendant.

Much evidence, some relevant and some otherwise, has been heard as to prior and subsequent conduct and conversations between the parties to the transaction. No subsequent statements made or acts done by either of these parties can affect or control the effect of the conversation had between Van Guilder and Whitaker, relied on by plaintiff as the basis of the alleged contract of insurance. They are only competent as they may tend to show what was the real understanding by the parties as to that transaction. For instance, Van Guilder testified about calling at Hunter & Whitaker's office the morning after the fire, and chiding him or speaking to them

about not sending the policy: "You are nice fellows. Have to come around for policies,"—something to that effect. In the first place there was nothing apparent from the alleged conversation on Friday, the 26th of August, which would indicate that it was the duty of Hunter & Whitaker to take the policy to Van Guilder, and the jury have a right to consider the fact that when Van Guilder went around to Hunter & Whitaker he had heard of the fire. He also testified that he said to them, "If you had notified me of Bailey's declining to take the risk, I might have placed it elsewhere." Such statement by him was apparently argumentative, and cannot affect the question as to whether or not there was a binding contract made on the preceding Friday.

Evidence has been heard and argument has been made respecting the action of Hunter in tearing up the letter from Bailey on Monday, and not advising Van Guilder of its receipt. Of course, gentlemen, if there was a valid contract or understanding made or had on Friday that the risk was taken pending an answer from Bailey, their failure on Monday to communicate to Van Guilder the information of Bailey's declinature would not release the defendant company; but if, on the other hand, the jury should find from the evidence, as heretofore charged, that Whitaker stated to Van Guilder that all he could do was to send the matter to Bailey (or that in substance), there was no obligation on Hunter & Whitaker to notify Van Guilder of Bailey's refusal, as in such case the risk would not attach until Bailey accepted the offer, and if Van Guilder wished to learn of the action of Bailey he should have called on or communicated with Hunter & Whitaker. And it is a matter of consideration for the jury whether it is not a circumstance in favor of Whitaker's understanding of the legal effect of the conversation of Friday that he did not notify Van Guilder of Bailey's rejection of the offer, as indicating his understanding that no risk was assumed unless Bailey accepted the proposition.

The next aspect of this case to which your attention is now respectfully and earnestly invited, gentlemen of the jury, is the matter of agency,—of power, of authority, on the part of Whitaker to bind the company on that occasion. The general rule of law is that a person who deals with an agent, knowing him to be an agent, must take notice of the extent of the powers and authority of that agent. He should make inquiry, and inform himself of the limitation, if any, upon the authority of the agent; and if he neglects this, and it transpires that the agent had not the authority delegated to him to do the thing or make the contract, the person for whom he assumes to act would not be bound. An exception to this general rule is found in the dealings of insurance agents. As, for instance, when an insurance company appoints an agent, and sends a commission to him to solicit applications in a city like this for insurance, and he has thus been held out to the community as such agent, then the public, in dealing with him, in the absence of any knowledge or notice of any special instructions limiting his authority, have the right to assume that such agent is clothed with all the power neces-

sary to enable him to receive and act on such applications, and to bind the company; but, notwithstanding this recognized and established exception, yet, if the party dealing with such agent knows or is advised of the fact that certain restrictions theretofore were imposed by the company or a public statute upon the powers and acts of the agent, then the company is not bound by any act done or contract made by the agent with such person within the terms of such restrictions and instructions. In this connection your attention is called, as no doubt it has already been evoked, to the alleged conversation between Whitaker and Van Guilder, some two weeks beforehand, with respect to the Fredonia transaction, and the conversation that the witness Pinkney testified to having had with Bales and Van Guilder some time prior thereto. The recollection of the court is that the witness Van Guilder said he did not recollect the interview with regard to Fredonia to which the witness Whitaker testified. I don't remember that their attention was called to the testimony, or the interview that Pinkney testified about. That is a matter for the recollection, however, of the jury. So if you find from the evidence that Pinkney, who was acting general agent of the Phenix Insurance Company of Brooklyn, N. Y., for the state of Missouri, with supervisory jurisdiction over the local agencies, instructed such agents, including Hunter & Whitaker, in substance, that in no event were they to take risks or undertake to make contracts to bind the company on property situate in the state of Kansas, and that in a conversation with the firm of Bales & Co.,—that is, with Bales and Van Guilder,—before the transaction in question, of August 26, 1892, he notified them of the fact of said injunction upon said agents, and that conversation had with them, in the language of the supreme court in the case of The Distilled Spirits, 11 Wall. 356, was "so recently as to make it incredible that he should have forgotten it, his principal will be bound by such information thus communicated to him." In other words, if these conversations were in fact had between Whitaker and Van Guilder and Pinkney and Van Guilder and Bales at a time so comparatively recent before the 26th of August, 1892, that it would be incredible to believe it had passed from their mind, or was not then present in their mind, then Van Guilder had notice of the limitations placed by the Phenix Insurance Company upon Hunter & Whitaker; and the company would not be bound, even though the jury should believe that Whitaker undertook to make a binding contract, as testified to by Van Guilder. And in this connection, gentlemen of the jury, on the question of notice, the court begs to call your attention to the statutes of the state of Kansas, as they bear upon and are related to the matters here at issue. The state of Kansas, in the exercise of its unquestioned sovereign right to legislate upon such questions, has declared that it shall be unlawful for any person, company, or corporation in this state either to procure, receive, or forward applications for insurance in any company or companies not organized under the laws of this state, or in any manner to aid in the transaction of the business of insurance with any such company.

That pertains to companies in that state. Then the next respects foreign companies:

"Any insurance company not organized under the laws of this state, may appoint one or more general agents in this state, with authority to appoint other agents of said company in this state. A certified copy of such appointment shall be filed with the superintendent of insurance, and agents of such company, appointed by such general agent, shall be held to be the agents of such company as fully, to all intents and purposes, as if they were appointed directly by the company. Agents for any such company in this state may be appointed by the president, vice-president, chief manager or secretary thereof, in writing, with or without the seal of the company; and when so appointed, shall be held to be the agents of such company as fully as if appointed by the board of directors or managers in the most formal mode."

### Section 3354 of the Kansas statutes provides:

"It shall not be lawful for any insurance company, association or partnership, incorporated, organized or associated under the laws of any other state of the United States, or any foreign government, for any of the purposes mentioned in this act, directly or indirectly to transact any business of insurance in this state without first procuring from the superintendent of insurance a certificate of authority so to do; stating also that said company has complied with all the requisitions of this act applicable to such company; nor shall it be lawful for any insurance company, association or partnership mentioned in this section, directly or indirectly to take risks, or transact any business of insurance in this state, unless possessed of the amount of actual capital required of similar companies, organized under the laws of this state."

The statute proceeds further to require them to establish agents on whom process can be served in case of litigation. Then section 3381 provides that:

"The superintendent of insurance is prohibited from issuing a license or authority to write policies of fire insurance, or to solicit and obtain and transact fire insurance business, to any person, agent, firm or corporation, unless such person, agent, firm or corporation is a legal resident of the state of Kansas at the time such authority is issued. And whenever any person, agent or corporation so authorized to issue policies of fire insurance and solicit and transact fire insurance business shall remove from the state of Kansas, the authority issued to such person, agent, firm or corporation shall be revoked, and the same shall be null and void." "Any fire insurance company authorized to do business by the superintendent of insurance is hereby prohibited from authorizing or allowing any person, agent, firm or corporation, who is a non-resident of the state of Kansas from issuing or causing to be issued any policy or policies of insurance on property located in the state of Kansas."

Now, gentlemen of the jury, it appears clearly enough—or at least so to the mind of the court, whatever you may think about it—that Van Guilder, as well as Whitaker, and in fact most if not all the insurance agents in this city, knew of the Kansas statute, and that it was the policy of the state that insurance companies wishing to transact business in that state must have established agents in the state, as has already been indicated to you, and they must do certain things to prevent being expelled for transacting business in that state. It was further known to Van Guilder that where an insurance company had an established agency in Kansas the agent here could not write policies on property situate in Kansas. In fact he gave that as a reason for not writing the policy on the property of Mrs. Potter in the companies which he

represented here, as they had agencies over there, or in those companies that had agencies over there. From this fact, gentlemen of the jury, you may infer that Van Guilder knew that an agent of the Phenix Company located in Kansas City, Mo., when it had a local agent in Kansas, was not authorized, as a rule, to write policies on property in Kansas. He knew it was against the statutory policy of that state. And although you may believe from the evidence that some of the agents in Kansas City, Mo., did do business through what they termed "dummies" in Kansas, such habit or method by any number of companies could not bind this defendant. It would be necessary for plaintiff's evidence to go further, and make it appear to the satisfaction of the jury that Hunter & Whitaker, or Whitaker, as defendant's agents, or either one of them, in Kansas City, Mo., were in the habit of doing that thing, and that Van Guilder dealt with them on the faith of that custom, practiced by them. Now, gentlemen of the jury, there is no evidence in this case that Hunter & Whitaker did any such thing. There is no evidence in this case that they, in any instance the court recalls, took applications here, and undertook to bind the company, prior to the acceptance of the risk by the Kansas agent, when the company had an agent in that state. On the contrary their direct testimony is that they did not do business in that way. So that if you should find from this evidence that, as a matter of fact, Whitaker & Hunter did not undertake, or had not theretofore undertaken, to so bind the Phenix Insurance Company by taking any risks here before it was submitted to Mr. Bailey, then there was no custom or usage upon their part upon which Van Guilder could establish his claim in the action in thus dealing with them. So it would follow that if Van Guilder had notice of the legal statutory policy of the state of Kansas, as above indicated, and that the defendant company had an agency in Kansas, then there was no presumption of law that the local agents in Kansas City, Mo., had authority to accept an application, and make a binding contract of insurance on property situate in Kansas, and in such a case it would devolve on the plaintiff to show that Hunter & Whitaker had special authority from the defendant company to make the contract relied on by plaintiff. The plaintiff has undertaken to supply this evidence through the testimony of Van Guilder, who testified that when he went to Whitaker, on the 26th of August, he asked him, in substance, if he insured property over in Kansas, and that he answered in the affirmative. Now, whether that occurred or not you are to determine from the weight of evidence between the witnesses on that subject. Even though you should accept his statement as true, that would not be sufficient to bind the defendant company, as a party cannot establish the existence of an agency to do a particular thing by the mere declarations of the alleged agent. He would have to go further, and show that the company, with knowledge of the agent's declaration or act in similar cases, or under other circumstances, had recognized it,—that is, ratified it in some way, as that the defendant had received the benefit of the agent's act, or had acknowledged that the agent

was acting in its behalf, and did not repudiate his conduct. In other words, gentlemen of the jury, that the court may be more explicit, and that you may not possibly misunderstand the court's meaning, if, as a matter of fact, these parties, in dealing with each other, were advised of the statutory policy of the state of Kansas, and that where there was an agent of a company here, which company did business in Kansas through an agent there, or that the defendant company here, through its agents Hunter & Whitaker, had never undertaken to take risks over there, as the plaintiff contends in this case, and that Van Guilder had notice through Pinkney and through Whitaker, by conversation before that, of the restrictions and injunctions placed upon their agents here, if he went there with that knowledge and dealt with them, then no mere statement made by this agent outside of the authority delegated to him by the company, as known to Van Guilder, could bind this company. Otherwise, it would be utterly useless for any company to place limitations upon the authority of its agent, if he could go on binding them, outside of his authority, with a party who was advised of the existence of the limitation placed upon his authority.

These are the salient points and the real issues in this case, and you are asked, gentlemen, to decide it according to the law as given you in charge, and according to the evidence as you understand it. The court, with its observation and experience with this jury during this term, hardly deems it necessary to enjoin upon you to do justice between these parties, and to decide this case according to the law and the evidence, regardless of the person of the plaintiff, or the fact that the defendant is an insurance company. You may take the case.

The jury returned a verdict for defendant, and no appeal was taken.