**FOSTER v. WOODWARD et ux.**

**No. 3547.**

Court of Civil Appeals of Texas. Beaumont.

Nov. 16, 1939.

Rehearing Denied Nov. 29, 1939.

C. A. Lord, of Beaumont, for appellant.

McCall & Broadus and Howell & Howell, all of Beaumont, for appellees.

WALKER, Chief Justice.

Driving into a filling station in the town of Nederland, Jefferson county, Texas, owned and operated by appellees, Mr. and Mrs. E. J. Woodward, on the 14th day of September, 1937, Mrs. Sammie Bihn, the agent of appellant, S. W. Foster, struck one of the pumps, tearing off the pump hose, and causing the escaping gasoline to ignite and set fire to the filling station. The filling station was a two-story wooden building; appellees used the second story

for the family residence. At the time of the accident, Mrs. Woodward was in the living quarters up stairs, and was injured in her attempt to escape from the burning building.

This suit was brought by appellees against appellant for damages for the injuries suffered by them in the fire. The issues of negligence raised on appellees' pleadings and evidence, and the defensive issues raised on appellant's pleading and evidence, were submitted to the jury. On the verdict, answering special issues and assessing appellees' damages at $5,350, judgment was entered in their favor, from which appellant has duly prosecuted his appeal to this court.

Appellant asserts that he was entitled to an instructed verdict, on the proposition that the evidence did not raise against him the issue that the injuries suffered by appellees were "the natural and probable result" of the negligence charged against him in their petition, and that the evidence did not raise the issue that Mrs. Bihn "in the light of the attending circumstances ought to have foreseen the consequence" of her act in striking the pump. We make the following summary of the evidence on these issues. The evidence satisfactorily established the issue that Mrs. Bihn was guilty of negligence in driving into the filling station and striking the pump, and that the fire resulted from her negligence; that Mrs. Woodward was in the second story of the building when the accident occurred and was injured in her efforts to escape. Mrs. Woodward testified (Q. & A. reduced to narrative):

"On the day of the fire I was in my room upstairs over the garage. I just don't know especially what I was doing. The first information I had of the fire, well, I heard an explosion and commotion downstairs, and I knew something terrible had happened. So I went to this window in this bathroom, to see what had happened and when I got there I could see a fire and smoke all downstairs and the flames were so much and the smoke was so much I couldn't make my way down the stairs. I went to the door that leads down the stairway, opened the door and saw the smoke and flames in the stairway. There was lots of smoke, and when I opened the door it filled the room so full of smoke I could hardly make my way out. I knew there was plenty of gas in and around the place, in the underground tanks. When I opened the door and saw the smoke and the flames were so much I couldn't go downstairs, I went through the house out to this window to make my way downstairs. I went through my bedroom into the kitchen out onto the roof. I tried to get down, I slipped or something; I fell, that's all I know. I fell to the ground. When I opened the door and saw what was happening I hardly know what happened after that; I was so frightened. When I opened the door and saw the flames and smoke on the stairs I turned as fast as I could go to go out at the window.

"Q. How long was it after you got out of the window before you fell? A. Well, immediately after I got out, because I made no steps that I know of; I hardly know what happened; I was frightened so when I saw what happened.

"Q. Why were you frightened, Mrs. Woodward? A. Well, because I knew that we were in danger with the gas and oil that were around the place.

"Q. I'll ask you if in your mind you felt that your life was in danger? A. I was in danger.

"Q. Was that what frightened you? A. Yes, sir.

"Q. And is that what caused you to go out of the window and try to descend from the roof? A. Yes, sir, because I knew if it all exploded that we would all be burned to death.

"Q. You say you knew if all this gas exploded down there you all would be burned to death? A. Yes, sir.

"Q. Did you know at that time that there was a quantity of gas down there? A. I did, yes.

"Q. Why did you go to the door and open it? A. Well, because I knew there was fire down there; I saw fire through the window. I rushed to the door to get down, because I knew I had to get out some way.

"Q. Why did you not go on down on the stairs? A. The fire and smoke would not permit me to go down the stairs.

"Q. Was it your purpose to get out of the building in any way that you could? A. Yes, sir.

"Q. As quickly as you could? A. Yes, sir.

"Q. Now, Mrs. Woodward, how did you think that you would descend from the building after you got on the roof? What were you going to try to do? A. Well,

the only way that I could see was to let myself down by a pipe that came up by the side of the house, to keep from hurting myself; so when I reached for the pipe, whatever I stepped on came out from under me and I went directly to the ground, and my feet—.

"Q. I'll ask you, Mrs. Woodward, if you intended to say there that your feet slipped? A. Well, I suppose they did. I hardly know what happened. I know when I got out, the next thing I knew I was on the ground.

"Q. Is the roof up there steep or flat? A. It is slanting.

"Q. Is it a steep slant? A. Well, I would hardly know; the roof just slants and that's all I can say. I know I couldn't stand on it very well.

"Q. You couldn't stand on it? A. No, sir.

"Q. Were you frightened at that time when you were trying to get off on the pipe? A. I was frightened, I hardly knew what I was doing.

"Q. Now, Mrs. Woodward, do you know how far you fell or about how far? A. Well, if I was judging, not knowing, anywhere from fifteen to sixteen feet."

■ The evidence as quoted was sufficient to raise the issue that the negligence of Mrs. Sammie Bihn was the proximate cause of the injuries suffered by appellee. In Carey v. Pure Distributing Corp., 124 S.W.2d 847, 849, Judge Critz, speaking for the Supreme Court, said: "It is the settled law of this State, and the law generally, that a mere showing of negligence will not justify holding the one guilty thereof liable for damages. The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries. In order for it to be said that an injury proximately resulted from an act of negligence, the evidence must justify the conclusion that such i jury was the natural and probable result thereof. In order to justify such a conclusion, the evidence must justify a finding    party committing the negligent act ought to have foreseen the consequences thereof in the light of the attendant circumstances."

Continuing in that case his statement of the law, on authority of San Antonio & A. P. R. Co. v. Behne, Tex.Com.App., 231 S.W. 354, Judge Critz said: "In spite of the above rules of law, it is not required

that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'"

Mrs. Bihn was visited with knowledge, by the physical facts before her, that the filling station was a two-story building and that the second story was used as a dwelling; from common experience she should have anticipated that someone might be in the second story of the filling station at the time of the accident, and that such person would try to escape. So, when by her negligence she caused the filling station to catch fire, the issue was raised that Mrs. Woodward's injuries in trying to escape from the building were the natural and probable result of Mrs. Bihn's negligence, that is, "in the light of the attending circumstances" Mrs. Bihn ought to have foreseen the result of her negligence. What we have said construing "natural and probable result," as that term relates to the facts of this case, is supported by the definition given by Judge McClendon of that term in the Behne case, supra [231 S.W. 356]: "The expression 'natural and probable result' has been used and interpreted to mean what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances. 'Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws.'"

The Supreme Court's opinion, Justice Critz speaking, in Missouri-Kansas-T. R. Co. of Texas v. McLain, Tex.Sup., 126 S.W.2d 474, affirmatively supports our construction of the facts of this case. See, also, Paris & G. N. R. Co. v. Stafford, Tex.Com.App., 53 S.W.2d 1019; and Sullivan v. Flores, Tex.Com.App., 132 S.W.2d 110.

■ We overrule appellant's proposition; "Plainly it was the condition of the roof and the fact that Drucilla Woodward went out upon the same, that immediately and directly and proximately caused her to fall and thereby sustain whatever injury she sustained." The evidence did not establish, as a matter of law, that a defect

in the roof—rotten shingles, defective shingles, etc.—caused Mrs. Woodward to fall. We have quoted above her explanation of the facts attending her fall, and the facts as testified to by her refute appellant's proposition.

■ Nor can it be said, as a matter of law, that Mrs. Woodward was guilty of contributory negligence in trying to escape from the building through the window and over the roof. The facts of this case invoke the doctrine of "imminent or sudden peril." Since Mrs. Bihn's negligence caused Mrs. Woodward to be in a situation of great peril, whether or not she acted wisely and cautiously in trying to escape through the window is not an issuable fact. International & G. N. R. v. Neff, 87 Tex. 303, 28 S.W. 283; Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545; Graham v. Hines, Tex.Civ.App., 240 S.W. 1015; Texas & N. O. R. Co. v. Diaz, Tex.Civ.App., 234 S.W. 919.

■ The testimony given by Mrs. Woodward in her oral depositions is subject to the construction that she did not try to escape from the building because of "imminent or sudden peril" to her life. We overrule appellant's contention that appellees were bound by this testimony. While it is the law that the testimony of a party to a law suit must be construed as binding upon him, Southern Surety Co. v. Inabit, Tex.Civ.App., 1 S.W.2d 412; Wristen v. Wristen, Tex.Civ.App., 119 S.W.2d 1104; Burguieres v. Farrell, Tex.Civ.App., 85 S.W.2d 952; Watkins Co. v. King, Tex. Civ.App., 83 S.W.2d 405; Texas Jurisprudence, vol. 17, pp. 576, 581, that rule is not controlling where he subsequently modifies or explains his former testimony. Watkins Co. v. King, supra. Mrs. Woodward testified clearly to facts showing that she tried to escape through the window because she thought her life was in imminent peril. That testimony rebutted or modified àny·former statement she made.

We give special issue No. 10–C: "Do you find from a preponderance of the evidence that such terror and fright (if you have so found) was · proximately caused by the negligence, if any, of the operator of the defendant's automobile?"

Appellant reserved the following exception to this issue: "The defendant objects and excepts to Special Issue No. 10–C because the same is a general charge and does not submit to the jury any specific act of negligence as alleged in the· plaintiff's pleadings."

We overrule these exceptions. Preceding special issue No. 10–C, the acts of negligence, together with proximate cause, as charged against appellant were submitted to· the jury; all of which were found in favor of appellees. Following that form of submission, it was not error for the court to fail to resubmit the specific acts of negligence as elements of special issue No. 10–C.

■ Proximate cause, following the submission of each specific act of negligence, was submitted by the following issue: "Do you find from a preponderance of the evidence that such negligence, if any, on the part of the operator of defendant's automobile, was a proximate cause of the injuries, if any, to the plaintiff Drucilla Woodward?"

Appellant excepted to this manner and form of submitting proximate cause on the ground that it was "on the weight of the evidence and assumed that .Drucilla Woodward sustained injuries." Appellant's point is that whether or not Mrs. Woodward suffered an injury should have been submitted to the jury; whether or not Mrs. Woodward suffered an injury on the occasion in question was not submitted to the jury. The point was not controverted by the evidence. Under the undisputed evidence, Mrs. Woodward did suffer an injury in the form and manner plead by her. The only point at issue was the extent of her injury.

■ Answering the following issue, the jury assessed damages at the sum of $5,000: "From a preponderance of the evidence, what amount of money, if any, if paid now, do you find would reasonably compensate the plaintiffs on account of the personal injuries, if any, sustained by the plaintiff, Drucilla Woodward, which were proximately caused (if you have so found) by the negligence, if any, of the defendant?"

Appellant urges the following propositions against the jury's answer to this question:

(a) "There is no predicate that would support the judgment for $5,000.00 rendered against the defendant on account of alleged personal injuries sustained by the plaintiff Drucilla Woodward, because there is no finding of the jury that she sus-, tained any of the injuries alleged to have been sustained by her, and because the

court did not submit any special issue and the plaintiffs did not request the submission of any special issue requiring a finding of the jury as to whether Drucilla Woodward sustained any of the personal injuries alleged to have been sustained by her; and because said issue was an ultimate and determinative issue in the case and an issue which was contested by the defendant by his pleadings and evidence, and because there were strong facts and circumstances established showing that Drucilla Woodward did not sustain injuries alleged to have been sustained by her, and which contradicted her testimony and the testimony of plaintiffs' other witnesses given with respect to her injuries; and furthermore, because the credibility of the plaintiff Drucilla Woodward, and that of other witnesses whose testimony the plaintiffs offered with reference to her injuries, was a question for the determination of the jury and one to be passed upon by the jury alone. Therefore, without such submission and finding of the jury the trial court could not and should not have rendered any judgment for the plaintiffs on account of the personal injuries alleged to have been sustained by Drucilla Woodward."

(b) "It was error for the court to refuse to set aside the finding of the jury in response to Special Issue No. 12, that the sum of $5,000.00 would be the reasonable amount to compensate the plaintiffs for the injuries sustained by Drucilla Woodward, and to grant a new trial, because of no finding by the jury of any personal injuries alleged to have been sustained by Drucilla Woodward that would support such finding of the jury; the defendant having moved the court to set aside such judgment for said reason with respect to such portion of the judgment rendered, in his amended motion for new trial."

Under all the evidence Mrs. Woodward sustained injuries; only the nature and extent of her injuries was in controversy. Appellant's exceptions do not present the point that the court sent to the jury evidence of injuries not plead. Where the evidence establishes beyond question that the complaining party received an injury, the issue was one of law and should not be submitted to the jury. 41 Tex.Jur. 1070.

The jury awarded damages in the sum of $125 in answer to the following special issue: "From a preponderance of the evidence, what amount of money, if any, if paid now in cash, do you find would reasonably compensate the plaintiffs for the doctors' bills, if any, medical bills, if any, incurred by the plaintiffs, such as were reasonable and necessary for the treatment of the plaintiff Drucilla Woodward (if you have so found), for her injuries, if any, proximately caused by the negligence, if any, of the defendant, his servant and agent?"

Appellant excepted to this issue: "Because the same was a general charge and required the jury to find negligence and proximate cause that occasioned the expenditures referred to, without reference to the plaintiffs' pleadings and without reference to any issue of negligence alleged in the pleadings, and because said charge was duplicitous, multifarious and omnibus and submitted numerous issues and questions to the jury without reference to any specific and definite fact element made by the pleadings and supported by the testimony."

What we have said above disposes of all exceptions to this issue except that the issue was multifarious. The question submitted as one issue, (a) "The doctors' bills," and (b) "Medical bills." On authority of Bull-Stewart Equipment Co. v. Sparra, Tex.Civ.App., 109 S.W.2d 784, this exception is overruled. We add further that appellant makes no statement that the amount of the bills was controverted; in fact, as we construe the evidence, the inference should be drawn that the bills were not controverted—$5 of the award was remitted.

Question No. 12–A submitted the loss of earnings of Mr. Woodward resulting from injuries suffered by him; answering the question, the jury assessed his damages at $50. The exceptions to this issue are in substance the same reserved against question No. 13, discussed above.

The court's definition of "proximate cause" was approved by this court in Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683. The court's definition of "unavoidable accident" was approved by this court in Vincent v. Johnson, Tex.Civ.App., 117 S.W.2d 135.

What we have said above overrules appellant's exceptions to special issues No. 11 and No. 15.

A careful review of the record shows no error. The judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.