**PACIFIC FIRE INS. CO. v. DONALD.**

No. 14999.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 14, 1949.

Rehearing Denied Feb. 11, 1949.

Court of Montague County, Texas, alleging, in substance, that in September, 1935 he was the owner of 5,500 bales of Johnson grass and prairie hay, that the same was destroyed by fire while located in a building situated in the town of Bowie, Montague County, Texas; that in said month he consulted with one H. M. Moore, agent of appellant herein, to insure said hay; that in pursuance thereto agent Moore advised appellee that he would inspect said property and did inspect said property and informed appellee that he was ready to write such policy of insurance; whereupon appellee instructed him to write said policy; that agent H. M. Moore had been writing insurance for appellee and that after he would write said policies he would deliver the same and collect his premiums therefor. That appellee relied upon the agreement so made between him and agent Moore and that he stood ready and willing at all times to pay the premium on said policy, and further plead that "if the name of the company was given to him to carry the risk the same has been forgotten and therefore he (appellee) was unable to designate the company which the said agent wrote the policy in or intended to write it in but says it is one of the said defendants, they being all of the insurance companies which he (agent Moore) represented at the time in question."

That on October 6th of the same year said 5,500 bales of hay were destroyed by fire, to plaintiff's damage in the sum of $1,100. That the contract of insurance was for the sum of 20¢ per bale. That H. M. Moore did not write the policy and appellant refused to pay for the hay under said oral contract of insurance.

Trial was to the court who rendered judgment on August 21, 1948 in favor of appellee and against appellant for the sum of $1,100 plus interest at six per cent from October 14, 1935 until paid. To which action of the court appellant filed this appeal, based upon two points of error, to wit:

1. The court abused its discretion and therefore erred in refusing to dismiss this cause for want of prosecution.

2. The court erred in finding and holding that appellant entered into a binding parol contract to insure hay owned by appellee.

Thompson, Knight, Harris, Wright & Weisberg and Dan Rogers all of Dallas, for appellant.

J. W. Chancellor and J. M. Donald, both of Bowie, for appellee.

HALL, Justice.

In the year 1937 appellee Paul Donald, of Montague County, Texas, sued four insurance companies, one of which was the appellant, Pacific Fire Insurance Company of New York, New York, in the District

The main complaint under point 1 is to the effect that this case was on file approximately ten years before it was tried on its merits for the first time. Appellant files in the record a complete history of the case including correspondence between the parties. From reading same we cannot agree with appellant's contention that the court abused its discretion in refusing to dismiss the case and the same is overruled.

Under point 2 appellant contends that there is no evidence to support the court's judgment to the effect that there was an agreement concerning the issuance of a policy covering said property against the destruction of same by fire since there was no evidence as to the term of years said policy was to be written, there was no evidence that the peril fire was included among the risks to be specified in the policy, there was no evidence as to the amount of premium agreed upon between the parties, and that no extension of credit was granted to appellant by agent Moore.

We now turn to the evidence to find answer to appellant's contention. The evidence introduced by appellee Donald reviewed in its most favorable light is in substance as follows:

Appellee Donald remembered buying baled hay during the year 1935; he first planned on storing said hay in a barn south of the Fort Worth & Denver City Railway owned by a man named Coker; he had in the meantime talked with Henry M. Moore with reference to writing a policy of insurance on said hay; Moore had written fire insurance for him prior to that time; Donald had never instructed Moore to write a policy in a particular company; Donald never did see the policy in writing. Mr. Moore later told him that he, Moore, had examined the rate and could give Donald a rate on the hay in the Gilmore and Coker barn and talked at length about it, what the rate was, etc., and in that conversation Moore said, "You know there are a lot of companies won't take this hay business and I have one that will, and you have some policies with it, and it is an easier matter for a company to take a policy where there is a previous coverage with a man" and told Donald what company and that said company was the Pacific. Donald told him then to hold up on it, that he had changed the location of the hay and was putting it in the lumber yard barn and that when he, Donald, closed the doors and got through putting the hay in he would give Moore the number of bales that he wanted coverage on, to which Moore agreed. Donald bought 5,500 bales of hay from Adkins and from a man in Henrietta and placed it in the new location. When Donald was informed by Mr. Wright that he was through hauling and shaping up the hay, Donald went down and shut the gate and went to Henry Moore's office in September, Donald was going to a baseball game in Wichita Falls and stopped and told Henry Moore (a man by the name of Stallings and Glenn Cunningham were present) that he had closed the barn and for Moore to write Donald insurance on 5,500 bales of hay at 20¢ a bale, to which Moore agreed he would and Donald relied on that agreement. Mr. Moore never did say anything about changing his plans on writing the insurance and Donald never did talk to Moore about it until after the fire, which was in October the same year. Donald stood ready and willing to pay the premiums at all times and would have tendered them into court if he had known what the amount was. Moore did not explain to Donald the rates on the new location. Donald told Moore to get a description of the property from Ed Watkins' Company, who had written insurance on the storage building, to which Moore said "all right." The hay was a total loss. At the time Donald went by Moore's office to inform him the amount of bales to insure there was nothing more said about the company he was going to write the insurance in.

On cross examination Donald further testified in substance:

That he did not know anything about how much the premium was on the hay, that Moore never did tell him as to that particular building (lumber yard), that Moore did not quote a premium on the building where the hay was stored. Donald did not have any agreement with Moore as to the length of time for the coverage but that it would not be a two or three year program, that he, Donald, would have

the hay out before the winter was over. Moore did not designate any company in a sense and in a sense he did; in the second conversation between Moore and Donald, Moore suggested the Pacific and Donald left it almost to his discretion to put it in the Pacific; Moore mentioned the Pacific Insurance Company and insisted on writing it in the Pacific because Donald had other policies with them.

▉ Appellant's contention is that since appellee plead that he did not know and did not remember what company appellant's agent agreed to write said policy in, and since his deposition was to the same effect, that such pleading and testimony in his deposition was binding upon him.

We find that no objection was leveled against the testimony wherein appellee named appellant as the company which was to write the insurance policy and under Rule 67, Texas Rules of Civil Procedure, such testimony is admissible.

▉ While it is the general rule that testimony of a party to a law suit must be construed as binding upon him, yet there is another general rule that the same is not controlling where such party subsequently modifies or explains his former testimony. Foster v. Woodward et ux., Tex.Civ.App., 134 S.W.2d 417.

▉ We find from the facts enumerated above that there is sufficient evidence to support the trial court finding in favor of appellee and against appellant to the effect that a meeting of the minds had been accomplished between the parties and that a contract of insurance had been consummated.

▉ As stated in 29 Am.Jur. 147, "* * * it is not essential to an oral contract of insurance that every detail should be expressly agreed upon, since an implied agreement concerning essentials is as good as an express agreement. It will also be observed that the difficulty in establishing an oral contract is frequently obviated, in part, at least, by the presumption that the parties contemplated the provisions and conditions of the usual written policy. More particularly, it is generally held that in cases of oral insurance contracts for original insurance, where no terms are expressly agreed upon, it is presumed that the parties contemplated those contained in policies usually issued to cover like risks."

In 92 A.L.R. 235, it is said: "So, it has been said that an agreement relative to the amount of insurance, amount of premium to be paid, and the duration of the risk, need not be expressed in order to render the contract effective, but may be implied from previous dealings between the parties, if such have occurred, and surrounding circumstances * * *. And where the amount of the premium is fixed by law or by the rules of the insurance department of a state, it is not an essential that it be specifically agreed upon by the parties." See also Southern Casualty Co. v. Flowers, Tex.Com.App., 38 S.W.2d 570; Western Nat. Ins. Co. v. Le Clare, 9 Cir., 163 F.2d 337.

Appellant relies upon the holding in the case of Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co., Tex.Com. App., 42 S.W.2d 248, 250, for reversal of this case, wherein it recites the following rule: "* * * But it is equally well settled that an executory contract for insurance is not enforceable, unless all of the elements essential to a contract of insurance have been agreed upon by and between the insurer and the insured. The contract must be in such condition that nothing is left open for future negotiations with reference to the subject-matter, parties, rate of premium, amount, or duration of risk." While we recognize this to be the general rule pertaining to oral contracts of insurance, yet it is described in said case and announced as follows: "It is a recognized principle of the law of contracts that the minds of the parties must meet upon the substantial terms of the contract before it can be enforced. This principle applies with equal force to an insurance contract."

The case under immediate discussion, however, was decided on the proposition that no contract was shown to have been consummated between the parties that the company involved would carry any part of the insurance upon the property in question

at the new location, whereas in the present case before us the testimony is to the effect that appellant was named as the company and that even though the first discussion between the parties was that the property would be placed in another location different from where it was burned, that appellant's agent agreed to insure it at such new location.

Finding no error, the trial court judgment is affirmed.