Opinion delivered November 16, 1949.

PACIFIC FIRE INSURANCE COMPANY v. PAUL DONALD.

No. A-2127. Decided October 12, 1949.
Rehearing overruled November 23, 1949.
(224 S. W., 2d Series, 204.)

Justice Garwood, joined by Justices Brewster and Harvey, dissenting.

*Thompson, Knight, Wright, Weisberg & Simmons* and *Dan Rogers,* all of Dallas, for petitioner.

The court erred in holding that the insurance company entered into a binding parol contract to insure the hay belonging to Donald. Southern Surety Co. v. Inabnit, 1 S. W. (2d) 412; Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Soc., 55 Pac. 435; Harkey v. Texas Emp. Ins. Assn., 146 Texas 504, 208 S. W. (2d) 919.

*J. W. Chancellor & J. M. Donald,* of Bowie, for respondent.

The request of the owner of the hay to the agent of the insurance company to write a policy of insurance, which the agent agreed to do, though he made no demand for the premium thereon, was a binding contract even if the agent overlooked the performance of his duty in issuing the policy. Republic Ins. Co. v. Poole, 257 S. W. 624; Globe v. Draper, 66 Fed. (2d) 985.

Mr. Justice Sharp delivered the opinion of the Court.

Paul Donald brought this suit against four insurance companies, one of which is the petitioner, Pacific Fire Insurance Company, New York, New York, to recover for the loss of 5500 bales of hay which were destroyed by fire on October 6, 1935, while stored in a building situated in Bowie, Texas. Respondent based his action on an alleged oral contract between himself and Henry Moore, agent of petitioner. The trial was to the court without a jury, and judgment was in favor of respondent and against petitioner, in the sum of $1,100 plus interest, and this judgment was affirmed by the Court of Civil Appeals, 217 S. W. (2d) 431.

■ Petitioner's application for writ of error contains only three points: (1) That the Court of Civil Appeals erred in finding and holding that petitioner entered into a binding parol contract to insure hay owned by respondent; (2) that the Court of Civil Appeals erred in refusing petitioner's request for findings of fact under grounds contained in his motion for rehearing; and (3) that the Court of Civil Appeals erred in overruling petitioner's first point, which reads: "The court abused its discretion and therefore erred in refusing to dismiss this cause for want of prosecution." This Court is limited to a consideration of the points contained in an application for writ of error, and all other points relied upon in the trial court and Court of Civil Appeals, and not contained in the application for writ of error, are waived. Rule 476, T. R. C. P.; Railroad Commission v. Mackhank Petroleum Co., 144 Texas 393, 190 S. W. (2d) 802; Texas & Pacific Ry. Co. v. Perkins (Tex. Com. Appls), 48 S. W. (2d) 249.

The controlling question presented here is whether there was any evidence to sustain the trial court's finding that petitioner and respondent entered into a valid parol contract to insure respondent's hay. Petitioner contends that there was no evidence to sustain the trial court's finding on this point, and the writ of error was granted on this contention.

■ The law placed the burden on the trial court to determine the issues of fact in this case. The evidence may be conflicting,

but the decisions of the trial court and Court of Civil Appeals on conflicting evidence are binding on this Court. Sid Katz, Inc. v. Walsh & Burney Co., 142 Texas 232, 177 S. W. (2d) 49, and cases cited. Since the trial court decided all questions of fact against petitioner, and both the trial court and the Court of Civil Appeals held that the evidence supported the judgment in favor of respondent, the case presents a question of fact, and not a question of law, and this Court on review is not authorized to overrule the judgment of the trial court if it is supported by any evidence. Article 1728, Vernon's Texas Civil Statutes, 1948; Texas Power & Light Co. v. Doering Hotel Co., 139 Texas 351, 162 S. W. (2d) 938, and authorities cited.

Since the trial court and the Court of Civil Appeals have determined the issues of fact in favor of respondent, it is unnecessary to set out in this opinion all of the evidence introduced in the trial court, and only the material parts of the testimony supporting the judgment of the trial court will be set out in this opinion. Paul Donald testified that during the summer of 1935 he bought some hay which he planned to store in Bowie, Texas. He first contemplated placing it in a barn owned by Gilmer & Coker, and in July he telephoned Henry Moore, agent of petitioner, and requested the rate on about 5,000 bales of hay if stored therein. Moore called back and informed Donald of the rate, and also told him, "you know there are a lot of companies won't take this hay business and I have one that will, and you have some policies with it, and it is an easier matter for a company to take a policy where there is a previous coverage with a man," and told Donald that the company was the Pacific. Donald told Moore to hold up the matter, as he was changing the storage to the lumber yard owned by Donald and his brother, and that once the hay was stored away he would tell Moore the number of bales to be insured, and Moore agreed to this. When the hay had been stored away in the lumber yard, Paul Donald on or about September 1st went by to check it and shut the gate, and before leaving for Wichita Falls he stopped by Henry Moore's office and asked Moore to write the insurance on 5500 bales of hay at 20¢ per bale, to which Moore agreed. No rate or premium was ever mentioned in regard to storage in the lumber yard building, and as to the duration of the insurance, Paul Donald testified that there was "no definite understanding but I told him it wouldn't be any two or three year program." And Donald also testified: "I told him I would have it out of there before the winter was over."

Nothing further was said or done in regard to the insur-

ance. The lumber yard and the hay stored therein were completely destroyed by fire on October 6, 1935. The next time the insurance of the hay was discussed by Donald and Moore was several days after the fire, when Donald stopped by Moore's office to report the loss; and Moore denied any liability, asserting that Donald had not requested insurance to be written on the hay.

The record discloses that Moore had written insurance before for the Donald brothers on other things than hay, and it appears that Moore would send them a bill for the premium some time later after the property was insured. Donald introduced in evidence a former policy on the law library of Donald & Donald, issued by the Pacific Fire Insurance Company of New York, through its agent Henry Moore, dated February 15, 1934, for a term of one year. Donald also introduced the statement that Henry Moore rendered for two policies on that library, both in Pacific, and one of which was the policy introduced in evidence. The statement shows policies dated February 15, 1934, total premiums of $71.89, with a cash payment of $40 on the premium, made on March 2, 1934; and balance due of $31.89.

The testimony of agent Moore corroborated that of Paul Donald to the effect that in the summer of 1935 he had had a conversation with Paul Donald concerning insurance on some hay to be stored in the Gilmer & Coker barn, and that he quoted Paul Donald a rate on hay if stored in that building. He denied having agreed to insure the hay in the lumber yard where it burned. On cross examination Henry Moore testified to the effect that when customers requested insurance, his usual procedure was to send them a bill for the premium the following month, and that on occasions he would carry over the bill another month.

■ The Legislature has delegated to the State Insurance Commission the power and authority "to prescribe, fix, determine and promulgate the rates of premiums to be charged and collected by fire insurance companies transacting business in this State." Article 4878 et seq., Vernon's Texas Civil Statutes, 1948. See also Article 4682a. Moore had no power to make insurance rates. That authority rests with the State Insurance Commission.

■ The statutes of this State do not prohibit parol agreements of fire insurance. Republic Ins. Co. v. Poole (Tex. Civ. App.), 257 S. W. 624, writ of error refused; 24 Tex. Jur., p. 662, sec.

7. A parol contract to insure is valid and enforcible. Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co. (Tex. Com. App.), 42 S. W. (2d) 248; Cohen v. Continental Fire Ins. Co., 67 Texas 325, 3 S. W. 296, 60 Am. Rep. 24; Ginners' Mutual Underwriters' Ass'n v. Fisher (Tex. Civ. App.), 222 S. W. 285; 24 Tex. Jur., p. 662, sec. 7; Cooley's Briefs on Insurance (2d ed.), Vol. 1, p. 497; Appleman on Insurance & Practice, Vol. 12, sec. 7191.

■ Donald testified that Moore agreed to write insurance in his favor on 5500 bales of hay at 20¢ per bale in the Pacific. Moore testified that the rate of premium on hay is promulgated on so much per hundred, and the rate he quoted to Donald was on the hay to be stored in the Gilmer & Coker barn, and the rate so quoted was so much per hundred on a basis of one year. It is undisputed that Moore was the agent of petitioner and authorized to represent it in making insurance contracts. There is nothing in the record to indicate that Donald expected any other kind of policy than the usual standard form of policy in use by the insurer at the time. In view of this testimony, the rule stated in the note annotating the cases in connection with the opinion of the Supreme Court of Washington in the case of Chenier et al. v. Insurance Company of North America, 72 Wash. 27, 129 Pac. 905, 48 L. R. A. N. S. 319, Ann. Cas. 1914D, 649, is applicable. On page 653 of Ann. Cas. 1914D the rule is stated as follows: "It is well settled that an oral agreement to insure against fire is presumed to be made in contemplation of a policy containing the terms and conditions in customary use, and impliedly to adopt the same, and it is on this ground that such agreements are sustained as complete and binding contracts." In support of this rule a long list of decisions and authorities is cited. See also Connecticut Fire Ins. Co. et al. v. Fields (Tex. Civ. App.), 236 S. W. 790, and Dalton v. Norwich Union Fire Ins. Soc. (Tex. Com. App.), 213 S. W. 230. And the risk will be regarded as beginning with the completion of the contract, which in this instance was when Moore agreed to insure the hay. Shubert v. McLain (Tex. Civ. App.), 27 S. W. (2d) 846; Western National Ins. Co. v. Le Clare, 163 Fed. (2d) 337; Potter et al. v. Phenix Ins. Co., 63 Fed. 382.

■ There is no dispute over the fact that conversations were had relative to the original plan of storing hay in the Gilmer & Coker barn. Moore quoted a rate on hay if stored in that barn, and that rate must have been based upon a consideration at least of the subject matter, risk, and duration, and it was in those conversations that the Pacific was mentioned. The only change by the parties was the location of the hay, from the

Gilmer & Coker barn to the lumber yard. At most this would merely change the rate of premium, which would automatically be determined by the rates on file with the State Insurance Commission. Hence there was needed only an agreement of the agent to insure the hay in the new location, and Donald testified that he so agreed to insure the 5500 bales at 20¢ per bale in the lumber yard. These facts show that the parties expressly or impliedly considered the essentials of a valid oral contract.

The trial court found that a valid oral contract of insurance was made by Moore as the agent of the Pacific Fire Insurance Company. In reaching this conclusion the trial court was justified in construing the conversations between Moore and Donald in connection with the surrounding circumstances and previous dealings between the parties. Since the rates had been fixed by the State Insurance Commission, it was not essential that they be specifically agreed to by the parties. Robinson v. Franklin Fire Ins. Co., 225 Mo. App. 960, 35 S. W. (2d) 635; Globe & Rutgers F. Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827; Globe & Rutgers F. Ins. Co. v. Draper, 66 Fed. (2d) 985.

■ Petitioner contends that the pleading and deposition by Paul Donald introduced in evidence, to the effect that he did not know with which company he had contracted, are binding on him. This is the second trial of this case. Both trials were before the same judge. The judgment entered in the first trial was set aside, and there is no contention made here that it is res judicata of the matters involved in the suit. The trial judge heard the evidence and passed upon the credibility of the witnesses. Since the respondent in his testimony at the second trial named the petitioner, and no objection was made to this testimony, it was admissible under Rule 67 T. R. C. P. The general rule prevails that when a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him to show that he was mistaken, although testifying in good faith, he is conclusively bound by such statements or admissions. But in this instance Paul Donald explained his previous testimony, and the trial court accepted his theory of the case, and hence the general rule is not controlling. Stanolind Oil & Gas Co. et al. v. State, et al., 136 Texas 5, 145 S. W. (2d) 569, and authorities cited; Foster v. Woodward et ux., (Tex. Civ. App.), 134 S. W. (2d) 417; 17 Tex. Jur., pp. 576 and 581.

■ This case was submitted to the court, and after hearing the evidence judgment was entered for respondent, as above indi-

cated. Both the trial court and the Court of Civil Appeals found that there was sufficient evidence to support the judgment. This Court will not set aside a judgment of the trial court unless it can be said, as a matter of law, that there was no evidence of a probative nature to support the judgment entered. We have examined the entire record, including the statement of facts, and have found evidence to support the judgment of the trial court. Therefore this Court is not justified in holding to the contrary. Gulf Production Co. et al. v. Continental Oil Co. et al., 139 Texas 183, 164 S. W. (2d) 488; Merrell et ux. v. Dorothy Hume Timmons, et vir 138 Texas 250, 158 S. W. (2d) 278; Beer v. Landman, 88 Texas 450, 31 S. W. 805; 11 Tex. Jur., p. 871, sec. 113.

We have considered the other questions presented, and find no reversible error. The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion delivered October 12, 1949.

MR. JUSTICE GARWOOD, joined by JUSTICES BREWSTER and HARVEY, dissenting.

Perhaps one should never call a decision unjust if it proceeds from a reasonably logical application of even technical rules of law. But the result in this case does not accord with my own sense of fairness, and being moreover quite doubtful if it logically follows from any established rule, I feel compelled to express a dissent.

The petition of respondent, Paul Donald, was filed in 1937 or nearly two years after the fire, and accordingly must have reflected plaintiff's mature understanding and recollection of the facts. Though it was signed by respondent's attorney, J. M. Donald, the two were brothers, law partners and business associates, and the respondent did not suggest that he was not familiar with its contents from the date it was prepared. It remained unchanged on the first trial ten years later and on the second and final trial in 1948.

This petition contained the specific allegation with respect to which of the four defendant companies the agent had agreed would issue the insurance, that "if the name of the company was given to him" (respondent) "who would carry the risk, the same has been forgotten, and, therefore, he is unable to designate the company which the said agent wrote the policy in, or intended to write it in, but says it is one of the said Defendants * * *."

The above quoted allegation of respondent's petition was confirmed about a year after the petition was filed, by the testimony of the respondent himself given in a deposition in the case in 1938, in which he stated unequivocally that the insurance agent had not in any of the various conversations between them ever mentioned the name of a particular company. The face and context of the portions of the deposition in question suggest no doubt that both the plaintiff and his interrogator understood the answers to mean that no particular company was agreed on as the insurance carrier in any conversation between respondent and the agent. This testimony of respondent, like the corresponding allegations of his petition, remained unchanged and unchallenged on his part until the final trial some ten years later.

On the first trial (1947), at which respondent was personally present, his brother, J. M. Donald, was his principal witness, testifying that as respondent's agent, he, J. M. Donald, had contracted verbally with the insurance agent to insure the hay in question with the defendant Columbia Fire Insurance Company and had expressly told the agent not to insure it with the defendant Pacific Fire Insurance Company, the petitioner here. Respondent, Paul Donald, heard that testimony. (When asked on the second trial if "You let your witness testify to that," he answered, "That's right."). At the first trial respondent himself also testified. Although questioned about his conversations with the insurance agent, he said nothing about the agent agreeing to place the insurance with the petitioner, Pacific, rather than the Columbia, which his brother then testified to be the and the only agreed insurer. Respondent was then evidently questioned specifically about whether any company was named in a particular conversation with the agent, alleged to have occurred in September 1935, and at which respondent said the final order for "the insurance" was given. He stated that no company was mentioned in that conversation but, while so stating, did not divulge what he now testifies to be the fact, that in an earlier conversation he himself had specifically agreed with the agent upon the petitioner, Pacific, in case he should later take out the insurance. Had he then said what he says now, obviously his testimony would have been at variance with the case made for him by the testimony of his brother.

The first trial resulted in a judgment against Columbia based clearly on the above testimony of respondent's brother, J. M. Donald, and on the failure of respondent Paul Donald himself to disclose on the stand the conversation with the agent regard-

ing the petitioner Pacific, which he now testifies to have had. The judgment contained an express finding that the contract was made with the Columbia. The respondent personally read the judgment prior to its entry, and he or his brother sought to uphold it on motion for a new trial.

On the motion it evidently developed that the case made against Columbia by the testimony of J. M. Donald was fruitless, because it was not shown that the agent at the time of the alleged contractual conversations was the agent of the defendant Columbia. In fact it appears to have been shown affirmatively on the hearing that the agent did not represent Columbia at the time in question. The trial court ordered a new trial.

On the next and final trial, J. M. Donald did not again testify, but respondent, Paul Donald, then became his own principal witness—testifying, as above indicated, that he personally had made a contract with the agent for insurance on the property in question, naming the petitioner, Pacific, as the insurer. Defendant's counsel made no objection to this new testimony but merely sought to impeach it. Respondent's explanation of his failure to include such important information in his testimony given in the first trial was that he was not then questioned as to the particular conversation in which he named the petitioner, Pacific. The unequivocal statement of his 1938 deposition that no particular company had been mentioned in his talks with the agent, he explained by saying that, although he read it and let it stand unchallenged from 1938 until 1948, he did not in 1938 understand the interrogatory in response to which he made the statement. He did not satisfactorily explain why he put his brother on the stand to make a case against Columbia and to release petitioner Pacific, when, according to his own present testimony, he knew that case to be at variance with the facts as within his own personal knowledge at the time.

The foregoing thus exhibits the unusual situation in which a plaintiff—who obviously understood every effect and implication of his own conduct—deliberately establishes in court a claim based exclusively on his agent's alleged contract with one of the defendants, and it only, and then shifts on a later trial to a totally different version of the facts to the effect that he personally made the identical contract with another of the defendants, and it only, although on the first trial he consciously refrained from disclosing such facts while testifying and let his deposition to the contrary remain uncorrected for some ten years.

Now I find no specific rule of statute or decision that clearly declares a judgment thus procured to be erroneous. On the other hand, it does not seem possible to allow a plaintiff to continue indefinitely to change his version of the facts of a case for each new trial that may occur, even though under such circumstances the rule of res judicata cannot apply and it cannot be said that the defendant actually changed his position in reliance on any particular version presented. Suppose, for example, that the trial court had set the present judgment aside and granted a third trial. Could the respondent then present a new witness and make his case against still another of the four defendant companies? And if there were a fourth trial, can the testimony be varied still again to charge only the fourth defendant? Surely that cannot be the law. It seems reasonable to hold that, just as a party is restricted to one of two inconsistent remedies, when he has selected it, so should he be restricted to a single version of the facts of a case, when, as here, he has once deliberately selected that version with full knowledge and appreciation of the circumstances, including the consciousness of what he himself knew at the time, and has supplied no reasonable explanation for changing to another version. Smith v. Chipley, 118 Texas 415, 16 S. W. (2d) 269, involved a perhaps clearer case of prejudice to the defendant than that presented here, but the two situations are analogous on principle and most of what was said in that decision seems applicable here.

Stanolind Oil & Gas Co. et al. v. State, et al., cited in the majority opinion, gives the latter little support. The relevant part of that decision, which was on the motion for rehearing, actually held that Sanolind would be cut off in future boundary litigation from taking a position inconsistent with that which it had developed by its own testimony in the suit in which the opinion was written. Cases like Foster v. Woodward, Texas Civ. App. 134 S. W. (2d) 417, wr. ref., do indeed permit of variations in the testimony of a party, but none of them suggest that there is no limit to such a practice, and they strongly imply that there must be some reasonable explanation for the variance. In the instant case no reasonable explanation is offered for the obvious variance between the case against Columbia deliberately made by respondent through his witness on the first trial and the case against petitioner Pacific made by the testimony of respondent himself on the final trial. The only explanation offered was with reference to respondent's statement in his deposition that no particular company was agreed on in the conversations between the agent and himself. That he may not

have understood the question asked on deposition does not explain why thereafter on the first trial he made a case through his brother against Columbia and on the final trial made a case against petitioner, Pacific, by his own testimony.

The failure of petitioner's counsel to object to Paul Donald's testimony on the final trial does not change the situation. Obviously he had no reason to suspect that such testimony would be forthcoming in the light of the petition, the witness's own deposition and the testimony of J. M. Donald on the first trial. The matter is not one of trying by consent an issue not raised by the pleadings so as to invoke Rule 67, T. R. C. P. The issue was whether the respondent had a contract with one of the defendant companies, and that was pleaded. Surely petitioner was not required then and there to amend his own pleadings in order to raise the question of whether the plaintiff could take one position in the first trial and another in the second. Nor is the question properly one of the admissibility of evidence, despite the contradiction between the evidence and the admission in the petition that Paul Donald did not know with which company he contracted. Even if it were purely a question of evidence, petitioner's counsel could not know in advance of respondent's actual statement about his conversations with the agent, and so could not attack the evidence except by asking the judge to disregard it. With the judge himself acting as trier of the facts, such a motion would hardly seem necessary in order to raise the question, when defendant's counsel promptly and vigorously sought to impeach the witnesses' statement by reference to the prior matters conflicting therewith and thereby brought the point forcibly to the court's attention. Looking at the matter as purely a question of evidence, the situation would seem much the same as if the only evidence for respondent had been hearsay admitted without objection. At least under our Texas rule, such evidence will not support a judgment. Texas Co. v. Lee, 138 Texas 167, 157 S. W. (2d) 628. In such a case, the aggrieved party would surely not be cut off from raising the point by failure to make a formal motion asking the court to disregard the hearsay in reaching his decision.

As to whether the point is properly presented here in petitioner's application, it is indeed not singled out as a "point of error". It is, however, argued at some length under petitioner's first point and seems logically relevant to that point, in which it is contended that the Court of Civil Appeals erred in holding petitioner to have made a binding parol insurance contract. To consider the question under such circumstances does no violence to the desirable provisions of Rule 469, T. R. C. P.

I think the case should be reversed and rendered in petitioner's favor.

Opinion delivered October 12, 1949.
Rehearing overruled November 23, 1949.