**C. M. PRITCHETT, Appellant,**

v.

**HIGHWAY INSURANCE UNDERWRIT-
ERS et al., Appellees.**

No. 6945.

Court of Civil Appeals of Texas.

Texarkana.

June 20, 1957.

Rehearing Denied Aug. 1, 1957.

Smith & Smith, Tyler, J. A. Mallory, Lindale, for appellant.

Strausburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, Spruiell, Lowry, Potter & Lasater, Tyler, for appellee.

CHADICK, Chief Justice.

When the tentative opinion in this case was prepared, I dissented believing that no reversible error was shown. After further reflection I conclude that error occurred in the submission of Special Issue No. 28. Originally I was of the opinion that a sufficient objection was not made to the submission of the issue. Counsel for the plaintiff objected in this language:

> "Plaintiff objects to the submission of Special Issue No. 28 for the reason that Special Issues Nos. 1 and 2 constitute affirmative submission of the ownership of the truck and trailer in C. M. Pritchett, and only one submission of the question is authorized, and a dual submission of such issue places an undue burden on Plaintiff, and there is no evidence that any person other than C. M. Pritchett owns any interest in the truck and trailer in question."

Undoubtedly the defendant Highway Insurance Underwriters was entitled to an affirmative submission of its defensive issue that Mr. H. M. Brewster owned the truck involved. Such submission would

necessarily have resulted in a dual submission because the plaintiff also had the burden of showing ownership of the truck in order to recover. The issue submitted, though, inquired if Allied Oil Company of Lindale, Texas, owned the truck. The testimony is contradictory as to who does business as Allied Oil Company of Lindale, Texas. Unquestionably, H. M. Brewster so operated at one time and apparently C. M. Pritchett also operated under that name. The issue submitted created confusion and settled nothing. Ordinarily, I would think that an objection to an issue that it placed an undue burden on a party would not be sufficient to point out an error unless coupled with other language pointing out a specific error. However used in the context shown above, it probably was sufficient to point out to opposing counsel and the trial court the vice in the issue.

It is solely on the error of submitting Special Issue 28 that I agree that the judgment denying a recovery under the public liability and property damage terms of Highway Insurance Underwriters' policy FC–107,430 be reversed and that phase of plaintiff's case be remanded to the trial court. In all other respects judgment of the trial court is affirmed. Justice FANNING concurs in the disposition as shown by his opinion.

Affirmed in part and in part reversed and remanded.

FANNING, Justice (concurring).

■■ It is solely on the error of submitting Special Issue No. 28 that I agree that the judgment denying a recovery under the liability policy be reversed and that phase alone of plaintiff's case be remanded to the trial court. Special Issue No. 28 inquired whether Allied Oil Company of Lindale, Texas, owned the truck and trailer in question. There was no evidence in the record that Allied Oil Company was the owner—in fact, Allied Oil Company was only a trade name and not a legal entity

which could have owned the truck. Defendants did not plead that Allied Oil Company was the owner but pleaded that Brewster was the owner. The testimony was contradictory as to who did business as Allied Oil Company of Lindale, Texas. Defendants requested no issue as to whether Brewster was the owner. Special Issue No. 28 inquired about a matter which would settle nothing, was confusing and misleading, and was reasonably calculated to harm plaintiff Pritchett, and in my opinion, probably harmed him in the jury's consideration of Special Issues Nos. 1 and 2, wherein the jury found that Pritchett was not the owner of the truck and trailer in question. While appellant's objections to Special Issue No. 28 were not perhaps as cogent and specific as they could have been, I agree that the objections made were probably sufficient to point out the vices in the issue.

I think the evidence was amply sufficient to support the jury's findings to the effect that plaintiff did not purchase or pay for any collision insurance on the vehicles in question and that the phase of the trial court's judgment denying recovery on the alleged collision insurance should be in all things affirmed.

I also think appellant's point complaining of the arguments of appellees' counsel should be overruled, because: (1) The arguments in question are not properly preserved by bills of exception, and there was, as I construe it, no agreement by counsel for appellees that the matters could be brought forward in the statement of facts, and the trial court did not approve the statement of facts; and (2) the arguments (even if properly preserved in the record) do not, in my opinion, constitute reversible error under this record.

I also think appellant's other points do not constitute reversible error under this record.

Chief Justice CHADICK and I concur in the reversal and remand of the cause of action on the liability policy *solely* on the error in the submission of Special Issue

No. 28, and we affirm the remainder of the judgment of the trial court.

DAVIS, Justice (dissenting).

This is a suit by C. M. Pritchett against Highway Insurance Underwriters, an insurance company hereinafter referred to as HIU, and Davis, Turner & Caruthers, a partnership composed of Olney Davis, Charles Turner and W. L. Caruthers, which partnership is an insurance agency with its offices situated in the City of Tyler, Smith County, Texas, and HIU was one of the several companies for whom said partnership was acting as agent at all times material to this lawsuit. The partnership will be hereinafter referred to as the Agency.

It will take an extensive statement to get a clear picture of the case, and will be necessary to go behind the date of the events that resulted in the suit. Involved in the statement, we will find H. M. Brewster, a son-in-law of C. M. Pritchett, Allied Oil Company of Tyler, Texas, a partnership business owned and operated by several residents of Tyler, Texas, and Allied Oil Company of Lindale, Texas, an assumed name used by H. M. Brewster. Even though Brewster and others testified that Allied Oil Company of Lindale, Texas, was owned by H. M. Brewster, as a matter of fact and of law, it was only an assumed name; not a legal entity.

Prior to February of 1952, Brewster was the owner of a 1949 model truck. At that time, he was working for Allied Oil Company of Tyler, Texas, using the truck.

In February of 1952, Pritchett went to the Insurance Agency in Tyler and purchased a policy of insurance upon said 1949 truck for public liability and property damage coverage only. In September, 1952, Pritchett bought a Ford truck from Bankston Hall Motor Company in Dallas, Texas, and issued his personal check for same in the sum of $3,888.60. This truck was placed in the name of Allied Oil Company of Lindale, Texas, and Pritchett signed the application for the certificate of title by signing "Allied Oil Company of Lindale, Texas, by H. M. Brewster." On October 1, 1952, Brewster and Pritchett executed a note to the Lindale State Bank at Lindale, Texas, in the principal sum of $2,400, which note also provided for a chattel mortgage upon the 1952 Ford truck and a 1946 model van-type trailer.

At the time Pritchett bought the 1952 Ford truck, he went to the Agency in Tyler and had the insurance policy that he had bought and paid for on the 1949 truck transferred to the 1952 truck because the 1949 truck had been wrecked. Pritchett also purchased fire and collision insurance upon the 1952 truck for the balance of the policy year of the original policy on the 1949 truck with a loss-payable clause to the Lindale State Bank.

The policy originally issued on the 1949 truck as well as the fire, collision and upset policy issued on the 1952 truck expired February 3, 1953. No other policy was issued on the 1952 truck until March 31, 1953. Prior to March 31, 1953, Pritchett went to the Agency for the purpose of securing a renewal of the insurance upon the 1952 Ford truck and secured from Turner, one of the partners, an estimate of the cost of a policy for fire, $100 deductible collision, and public liability and property damage which amounted to a total of $735.90. The fire and $100 deductible insurance was quoted at $250.05. The public liability and property damage was quoted at $485.90. Pritchett returned to the office of the Agency on March 31st and gave Turner, for the Agency, a check for $485.90, and contends that at the same time he paid cash for the fire and $100 deductible collision policy and instructed the Agency to issue the insurance in two policies, furnishing one to Pritchett for public liability and property damage to be carried with him in his truck on long distance hauls, and the one for fire and collision to be mailed to the Lindale Bank as the lienholder on the property insured. The pay-

ment of $485.90 by check is not disputed. The cash payment is denied. The prices quoted were sufficient to cover the public liability and property damage on the truck and trailer and the fire and collision insurance with $100 deductible clause upon the truck only. Therefore, if the money was paid as contended by Pritchett, he did not pay for fire and collision insurance upon the trailer.

On March 31, 1953, the Agency issued to Pritchett in the name of Allied Oil Company of Lindale, Texas, a public liability and property damage policy, being policy No. FC 107,430; the policy being written with HIU. On April 1, 1953, HIU wrote the Agency as follows:

"Re: FC 107,430 Allied Oil Co.

" * * *

"Gentlemen:

"We acknowledge receipt of the above captioned daily together with operational survey, and regret to advise that we will have to ask to be relieved of this coverage.

"As we have previously advised you, we are unable to handle trucking accounts except for agents who give us a reasonable volume of fire and miscellaneous casualty business. We must ask that all our agents comply with this rule since we are not attempting to increase our writings in the commercial car field, and offer this facility only as an inducement to an agent to give us fire and other lines of business.

"Further, all risks of this character must be submitted to this office, and should not be written by the agent.

"In examining your account we find that the contract has been in effect since last November, and you have not favored us with anything other than commercial business.

"We trust you will understand our reasoning in this matter, and will thank you to relieve us of the above captioned coverage at your earliest convenience." * * *

On April 21, 1953, HIU again wrote the Agency the following letter:

"Davis-Turner & Caruthers,
214 No. College St.
Tyler, Texas.    Re: FC 107430 Allied
                        Oil Company
"Gentlemen:

"Under date of April 1st we asked for cancellation of the above captioned policy, but to date we have not received evidence of cancellation.
"If you have not already done so, please relieve us of the coverage without further delay.
"Thanking you, we are
                Yours very truly,
                Highway Insurance
                    Underwriters
                L. M. White
                Agency Director."

On April 30, 1953, the Agency contends it issued to Allied Oil Company of Lindale, Texas, for Pritchett, a policy of insurance with The Service Mutual Insurance Company of Texas providing for public liability and property damage upon the 1952 truck, but Pritchett denied ever receiving such policy, or any notice thereof. This was to be in lieu of the policy issued with HIU.

On May 4, 1953, the Agency notified HIU that the policy had been replaced with another company on April 11, 1953, and stated: "Sorry we failed to notify you. The assured is returning your policy in a few days & will forward to you as soon as we receive it. * * *"

On May 7, 1953, the Agency, through Turner, contends that it wrote Pritchett the following letter:

"Mr. C. M. Pritchett
"P. O. Box 602
"Lindale, Texas
"Dear Mr. Pritchett:
"Enclosed you will find Service Mutual Policy No. 104582A covering your 1952 Ford tractor and semi-trailer.

It was necessary that the insurance covering this truck be written in another company, other than the company your present policy is with. Please use the enclosed self-addressed, stamped envelope and return the other policy to our office for cancellation.

"I am sure you will find this new policy to be written to your entire satisfaction. * * *"

Pritchett denies receiving such letter.

On or about June 15th, Turner, of the Agency, without the knowledge or consent of Pritchett, either orally or in writing, signed Pritchett's name to a "Lost Policy Receipt" and forwarded the same to HIU. This fact was admittedly not known to Pritchett until after the collision that occurred the following November which resulted in this lawsuit, and the unauthorized execution of said "lost policy receipt" was not known to HIU until after the collision.

On July 17, 1953, the Agency contends that the policy allegedly issued with the Service Mutual Insurance Company was cancelled by cancellation notice mailed from the Insurance Company office at Waco, Texas, effective as of July 28, 1953. Pritchett denies receiving notice of this cancellation.

On August 7, 1953, the Agency, by Turner, issued to Pritchett a public liability and property damage policy of insurance with Service Mutual Insurance Company covering a 1951 Chevrolet truck that had been wrecked and had not been in use for some time. This policy was issued without any request by Pritchett or any one in his behalf.

On July 25, 1953, one W. A. Dorman wrote the Agency and requested that he, Dorman, be added as additional insured in HIU policy No. 21C 107,430 because he, Dorman, had leased the truck. On August 19, 1953, Dorman wrote the Agency stating that he had heard nothing from them in connection with the letter, and because of some excess coverage he, Dorman, had obtained, it was necessary that he be pro-vided with a memo copy or duplicate of the HIU policy, and asking them to please provide the same at their earliest convenience. On September 15, 1953, Dorman wrote the Agency the following letter:

"Davis-Turner & Caruthers
214 No. College
Tyler, Texas.
"Gentlemen:
"Likely it makes no difference to you, as you don't seem to pay any attention to letters or requests anyway, but just for the record, please disregard the requests of Allied Oil Company of July 25, and a follow up of my own on August 19, that I be named as an additional assured under the Highway Underwriters Policy No. F.C. 107430, issued to said Allied Oil Co.

"Your failure to get such an endorsement, or to advise anything about it was one of the reasons, and a large one, that it was necessary to cancel a lease agreement I had on equipment registered in the name of Allied Oil Co.

"For the good of your own business I hope this case is an exception to the general way you handle your business.
"Sincerely yours,
"W. A. Dorman."

On November 14, 1953, Pritchett was involved in a collision in the 1952 Ford truck in Urbandale, Illinois. The truck and trailer were levied upon by a writ of attachment and resulted in damages to Pritchett other than damages to the truck and trailer in the alleged sum of $1,692.70. Pritchett immediately notified the Agency at Tyler, Texas and was informed that the policy of insurance with HIU had been cancelled. HIU was then notified and they immediately denied liability contending that the policy had been cancelled and that it had a "Lost Policy Receipt" signed by Pritchett, which released it, HIU, from any and all damages by virtue of the issuance of the aforesaid policy on March 31, 1953, upon said 1952 truck.

. On November 19, 1953, the Agency by Turner wrote W. A. Dorman a letter, with carbon copy to C. M. *Pritchard* at the correct P. O. box number of C. M. Pritchett at Lindale, Texas, which letter reads as follows:

"I can certainly understand and appreciate the tone of your last letter since according to you, all previous correspondence had been ignored by this office. First, let me apologize and state flatly that we had not received any previous correspondence from you or Mr. Brewster concerning this request and the thing that amazes me is that three pieces of mail which were mailed to us on a different date should all three be lost. However, we have had some trouble with our mail within the last sixty to ninety days and this may be the case here.

"It has always been the desire of this office to give its policy holders the very best insurance service possible and it is my opinion that our reputation will bear this out and you can rest assured that if we had received any such correspondence from you or Mr. Brewster, it certainly would have been answered.

"I am extremely sorry that this happened and I hope that if we can be of any service to you in the future, you will get in touch with us."

On December 2, 1953, Pritchett filed a proof of loss on the public liability and property damage policy issued by the Agency with HIU. On December 4, 1953, the Agency, by Turner, notified Pritchett: "Your attorney, Mr. J. A. Mallory, has filed proof of loss on the wrong policy. It should be No. 104582A with the Service Mutual Insurance Company of Waco, Texas;" this policy was already allegedly cancelled, which fact the Agency well knew.

On January 11, 1954, the Agency, by Turner, executed and mailed a notice of cancellation of the policy issued on the wrecked 1951 Chevrolet and mailed it to Pritchett by registered mail with return receipt requested. Pritchett admits receiving this notice of cancellation. Here I comment that the alleged notices of cancellation in April and July were mailed by ordinary mail. The last notice was by registered mail with return receipt requested, which I think is a mandatory reason why the proper authorities should require that all notices of cancellation of insurance policies by mail should be done by registered mail with return receipt requested, or by certified mail. There has been much litigation over the issue of fact as to whether or not such notices were written or mailed.

After denial of liability by HIU, Pritchett filed suit against the Company on the public liability and property damage policy issued on March 31, 1953. By subsequent amended pleading he filed suit against HIU and the Agency not only upon the public liability and property damage policy but also alleged that he contracted to buy and paid for a policy for fire and $100 deductible collision insurance on the truck.

HIU filed a cross-action and asked for indemnity over and against the Agency in the event it should be held liable.

Trial of the case was to a jury and upon jury answers to special issues, judgment was rendered that Pritchett take nothing against either HIU or the Agency, and Pritchett appeals.

The judgment of the trial court was based upon jury findings to special issues that Pritchett was not the owner of the 1952 truck or the van trailer; that Pritchett did not apply to the Agency for $100 deductible collision and fire insurance policy (the court included the terms "lightning, transportation, and theft," in the special issue, although, there was no contention that such forms of insurance were applied for, and the appellant did not except to the charge for those reasons); and, that Allied Oil Company of Lindale, Texas, owned the truck. The jury assessed the damages sustained by Pritchett, but these issues be-

come immaterial here. The jury also found that the Agency wrote the letter dated May 7, 1953, in an attempt to cancel the policy of insurance sued upon, but found that such letter was not mailed.

By Point 3 appellant complains of the action of the trial court in submitting Special Issue No. 28, which inquired as to whether or not Allied Oil Company of Lindale, Texas, was the owner of the truck and trailer involved in this suit. Special Issue No. 1 inquired if Pritchett owned the truck, and Special Issue No. 2 inquired if he owned the trailer. The submission of these issues in the converse constituted a double submission of the question of ownership. The appellees did not plead that the truck and trailer belonged to the "Allied Oil Company of Lindale, Texas," but pleaded that the (sic) automobile was owned by H. M. Brewster." Appellees did not plead any of the other legal defenses authorized by Articles 21.16 and 21.17, V.A. T.S., Insurance Code, in avoidance of liability on the policy. Neither did appellees prove that any false representation was material to the risk or contributed to the contingency upon which appellant contends that HIU became liable. Appellees would not have been entitled to submission of these issues under the present state of pleadings if they had asked for it. Now, it is true that a defendant is entitled to an affirmative submission of any fact or group of facts affirmatively pleaded in defense to any suit. In the case of Kuykendall v. Doose, Tex.Civ.App., 260 S.W.2d 435, 437, wr. ref., n. r. e., the court quoted the following from Humble Pipe Line Co. v. Kincaid, Tex.Civ.App., 19 S.W.2d 144-148, wr. ref.:

" * * * It is the settled law of this state that a defendant is entitled to an affirmative submission to the jury of any fact or group of facts pleaded by him and supported by material evidence, which, if found true, would exculpate him from liability, and he may not be deprived of this right through an adverse finding upon some other issue the answer to which would render him liable. Dallas Ry. Co. v. Speer, Tex.Civ.App., 299 S.W. 507; Northern Texas Traction Co. v. Woodall, Tex. Com.App., 299 S.W. 220; Montrief & Montrief v. Bragg, Tex.Com.App., 2 S.W.2d 276."

But, a defendant who pleads an affirmative defense is not entitled to both an affirmative and a negative submission of the defenses pleaded. 41-B Tex.Jur. 631, Sec. 480, and authorities therein cited. Actually, appellees were not entitled to a submission of Issue 28 as worded for two reasons: (1) They did not allege that Allied Oil Company of Lindale, Texas, was the owner of the truck involved; (2) under the facts in this case, Allied Oil Company was nothing more than a fictitious or assumed name, was not a legal entity, and could not, as a matter of law, own property. On the question of the submission of both affirmative and negative issues, see also Ross v. Texas Employers' Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541, and Pacific Emp. Ins. Co. v. Brasher, Tex.Civ.App., 234 S.W.2d 698. Appellees pleaded that Brewster was "the sole owner of the (sic) automobile." The evidence showed that Brewster just used the name "Allied Oil Company of Lindale, Texas." This name, "Allied Oil Company of Lindale, Texas," is nothing more than a fictitious or assumed name. For a definition of "fictitious" or "assumed names" see 31-B Tex. Jur., pp. 107–113, incl. Secs. 14–18, incl., and authorities cited therein. In Davis v. Raney Auto Co., Tex.Civ.App., 249 S.W. 878, wr. ref., it was held that no suit could be maintained nor judgment rendered against the "Raney Auto Company" because it was not the name of an actual or legal person, but merely a business enterprise that is not recognized in law as an entity which may sue or be sued. Such are the facts in this case.

If Pritchett did not own the truck and trailer as found by the jury, such finding was sufficient to support the affirmative defense of non-ownership alleged

by appellees. A mere lack of ownership would not defeat liability on the policy under the Articles of the Insurance Code hereinabove cited. Therefore, we hold that the submission of Special Issue No. 28 constitutes reversible error and Point 3 is sustained.

My fellow judges find that the remaining errors brought forward do not present reversible error and overrule the same. I respectfully dissent from their holding on the following points:

By Point 4 appellant complains of the action of the trial court in refusing to define the word "owner" as used in Special Issues Nos. 1 and 2.

The definition of the word "owner" as submitted by appellant was as follows:

"The word 'owner' as used in Special Issues Nos. 1, 2 and 28 submitted to you, includes, but is not limited to a person who has dominion over the thing which he has the right to enjoy and to do with as he pleases, even to spoil or destroy it, insofar as the law permits, unless he be prevented by some agreement or covenant not to do so."

Under the facts as pleaded and proved in this case, the word "owner" should have been defined. The definition as submitted may have been sufficient but the definitions as set out in Alamo Casualty Co. v. Wm. Reeves & Co., Tex.Civ.App., 258 S.W.2d 211, no writ history, is all the definition needed for the ownership of a motor vehicle. The ownership of a motor vehicle is defined in substance as follows: "The test of true ownership is a legal right to compel the assignment and transfer of the certificate of title to such vehicle." Citing Churchman v. Ingram, La.App., 56 So.2d 297. In view of the peculiar facts in this case, Special Issues Nos. 1 and 2 should have inquired if Pritchett was the "sole owner" of the truck and trailer; and "sole ownership" should have been defined as "when no other [person] has any interest in the property as owner." Hicksbaugh Lbr.

Co. v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 177 S.W.2d 802, 804, no writ history. I would sustain Point 4. I would recommend the briefest definition possible of "owner", or "ownership", or "sole owner" for the convenience of the jury.

By Points 10 and 11, appellant complains of the action of the trial court in entering the judgment on the verdict of the jury, contending that the answers of the jury to the special issues were insufficient to support the jury verdict. In view of the necessity of another trial, I will not discuss the sufficiency of the evidence on all the issues complained of, but will say that the points relative to the jury answers to Special Issues Nos. 1 and 2 are very close to, if not, insufficient, because Pritchett offered in evidence his cancelled check showing that he paid for the truck. The testimony of both Pritchett and Brewster, as well as all other evidence, was to the effect that Pritchett exercised complete dominion over the truck and trailer and that the Agency dealt with Pritchett knowing that the truck was in the name of Allied Oil Company of Lindale, Texas, and that Pritchett gave his personal check for the policy of insurance that was issued. The mere fact that property stands in the name of another will not defeat ownership. Presley v. Wilson, Tex.Civ.App., 125 S.W.2d 654, wr. dis., judg. cor. The meager evidence and conflicting statements of Pritchett and Brewster, I think, are insufficient to overcome all the testimony of ownership in the case. I would sustain Points 10 and 11.

By Points 15 and 16 appellant complains of the action of the trial court in excluding the Dorman letters and refusing appellant the right to cross-examine Turner relative to same. As seen by the letters above quoted, these letters were admissible and appellant should have been permitted to cross-examine Turner about them. McCormick & Ray, Texas Law of Evidence, 2d Ed., p. 467, Sec. 600. See also 1 Texas Law Review 470, Sec. 601. I would sustain Points 15 and 16.

By Points 17, 18 and 19, appellant complains of the action of the trial court in permitting defendants to offer appellant's prior pleadings into evidence and in refusing to permit appellant to offer testimony to explain why changes had been made from the previous pleading and in refusing to withdraw the former pleadings after having refused appellant permission to explain the difference in the pleadings. The points are well taken and I would sustain them. It is a well-established rule of law that abandoned pleadings, or pleadings filed in another cause, or affidavits may be offered in evidence but they are not conclusive and may be explained or attacked by the party against whom they are offered. 17 Tex. Jur. 576, Sec. 240, and authorities therein cited. Lesikar v. Lesikar, Tex.Civ.App., 251 S.W.2d 555, wr. ref.; Miller v. Hooper, Tex.Civ.App., 94 S.W.2d 230, no writ history; Parham v. Montagne, Tex.Civ.App., 238 S.W.2d 732, wr. ref., n.r.e.; Dallas Rwy. & Terminal Co. v. Hendricks, Tex. Com.App., 140 Tex. 93, 166 S.W.2d 116, opinion adopted by Supreme Court.

By Point 20, appellant complains of the action of the trial court in sustaining an objection to his offer of a motion by appellees to strike appellant's request for admissions relative to the lost policy receipt hereinabove mentioned to show their inconsistent position in the case. The motion was admissible just the same as appellant's inconsistent pleadings were admissible against him. The authorities cited under Points 17, 18 and 19 support my theory of the law on this point. See also McCormick & Ray, Texas Law of Evidence, 2d Ed. Vol. 2, p. 38, Sec. 1148; and City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556, wr. ref., w.o.m. I would sustain Point 20.

By Point 21, appellant complains of certain argument to the jury by attorneys for appellees admitted by the trial court over his timely objections. The argument of one of said attorneys for appellee, HIU, was relative to the failure of appellant to call one Otto Simpson as a witness in the case after he, appellant, had produced said witness in court, had him sworn as a witness, but failed to have him testify. The argument to which error is assigned, together with the objections of the attorney for appellant and the rulings of the court thereon, and comments of the court are as follows:

"Mr. Lasater: Mr. Troy Smith had Otto Simpson sworn in before this Jury at the beginning of this trial. Mr. Pritchett got on that witness stand and said Otto Simpson was with him.

"Mr. Troy Smith: We object to that argument. The witness was as available to Defendants as he was to us. He is not in our employ, he is not under our control, and we ask that the Jury be instructed not to consider it for any purpose whatsoever.

"The Court: Overrule your objection.

"Mr. Lasater: Your Honor, he was sworn in by them as their witness.

"Mr. Troy Smith: We except.

"Mr. Lasater: He was sworn in as a witness for the Plaintiff, and that Plaintiff got on that witness stand and said that Otto Simpson was with him when he paid that money. Why didn't they put Otto Simpson on the witness stand? There wouldn't be but one conclusion, and that is that he wouldn't support that testimony, and that he would show Mr. Pritchett's testimony was false.

"Mr. Troy Smith: We object further because Counsel if now testifying as a witness, making himself a witness before the Jury, undertaking to tell them what the witness would have testified or would not have testified to had he been on the witness stand. Ask the Court to instruct the Jury not to consider the statement of Counsel with respect to the witness's testimony and to produce Mr. Simpson, for any purpose whatsoever.

"The Court: Overrule your objection.

"Mr. Smith: We except.

Jury Out At Close Of Defendant's Argument.

"Mr. Troy Smith: At this time we make a Motion for mistrial on account of the argument made by Mr. Lasater relating to the witness Simpson, any testimony in his argument given in connection with the discussion of the witness Simpson.

"Mr. Lasater: Will you let the record show that the Court did swear in the witness at Mr. Smith's request, before the Jury, at the beginning of this trial?

"Mr. Troy Smith: We admit that we produced him and he was sworn in.

"The Court: I believe in the presence of the Jury.

"Mr. Troy Smith: Yes, he was sworn in in the presence of the Jury.

"The Court: All right. Overrule your Motion.

"Mr. Smith: We would like for the record to show that the witness was here at all times during the course of the trial and available to both parties alike.

"Mr. Lasater: Well, now, I don't know whether he was or not, Your Honor, whether he was available to both parties alike or not. He was his witness, and he had him sworn in, and if I had been out there talking to him, he would have been the first one to holler about it.

"Mr. Brin: He was sworn in and put under the rule.

"The Court: *After he was sworn in as a witness by the Court, Mr. Lasater, I think he was then available to any party to the suit which may have want-* ed *to call him as a witness.* (Emphasis mine.)

"Mr. Lasater: Well, as to talking to him about what his testimony would be, I don't think it would be proper for me to go talk to one of his witnesses that he had out there sworn in.

"The Court: *Well, I didn't know there was any rule against it.* (Emphasis mine.)

"Mr. Troy Smith: Let the record also show that the witness has not been dismissed under the direction of the Court, that he was placed under the rule and has not been dismissed with the consent of the Court.

"Mr. Lasater: Is he still here?

"The Court: I will have to disagree with that, Mr. Smith, in this respect, that after all of the testimony was in and after the case closed, the Court personally went by the witness room and told Mr. Simpson anud Mr. Whisenhunt that they might be excused.

"Mr. Smith: After both parties had announced that they rested?

"The Court: Yes, sir.

"Mr. Smith: That's all right. That's all right. That is exactly what I would like to have the record show.

"The Court: Well, there is no dispute that I know of but what the witness, Simpson, was in attendance on the Court from the time he was sworn in until the evidence had closed. And he was in the witness room sitting there, by the Court's observation, after all the parties had closed."

*Jury Returned.*

Appellant takes the position that after the witness, Simpson, was sworn and required to remain in attendance in court throughout the trial of the case, such witness was just as available to appellees as a witness as he was to appellant. During

the course of the trial, appellees did call the witness to the witness stand and interrogated him about some purported conversation that allegedly had taken place between said witness and some of the jurors (this was outside the presence and hearing of the jury), which was apparently done for the purpose of trying to disqualify said witness, or causing a mis-trial. The witness having been sworn as a witness in the case, he was just as available to appellees as he was to the appellant and this argument was error. 41–B, Tex.Jur., 301, Sec. 251, and authorities cited therein. In the case of Jarbet Co. v. Hengst, Tex.Civ.App., 260 S.W.2d 88, 93, no writ history, we find the following:

"In his closing argument counsel for plaintiff commented:

" 'Now let us see something else, gentlemen, they overlooked in this case. You see this gentleman sitting right over there with his hand on his chin. You saw him sworn in on this case yesterday morning. You heard them testify that there were two other men working here for the Jarbet Company, their employer. Who is that man over there? Who is he to come before this Court and never said a word Hengst has said? Who is he? You got a right to know. They brought nobody here yet that testified they had these two men here working; they would know what was here, but they haven't put them on the stand to tell you. They are distorting facts.'

"To which argument counsel for defendant took an exception and requested the court to instruct the jury not to consider it. This objection was overruled.

"The witness was available to both parties alike, and comment on the failure of defendant to call the witness was improper. Stewart v. Shoemake, Tex.Civ.App., 225 S.W.2d 873, error ref., n. r. e.; Texas Employers' Ins.

Ass'n v. Hicks, Tex.Civ.App., 237 S.W. 2d 699, error ref., n. r. e."

I cannot conceive of a case more directly in point and am convinced beyond any doubt that the argument was reversible error.

The argument before the jury of one of the attorneys for appellee, the Agency, to which error is assigned, together with the objections and rulings of the court are as follows:

"(From Argument of Mr. Zeb Spruiell)

"If the Court please, I shall only use about eight of those minutes.

"Ladies and Gentlemen of the Jury, it has been some time since I have been in the Courthouse here in Smith County trying a case. I guess it has been three or four years. Due to conditions, I haven't been able to come over, and changes have taken place since I have been here; and I see you ladies have joined us over here in the trial of these cases. I know those changes are right, and I know of no occasion when I would feel better in coming to you and asking your consideration than I would that you carefully consider the testimony of, I would say, Davis, Turner, and Caruthers; but I would say more especially Charlie Turner. He is the one in this case that they are accusing of really not only something that is very detrimental to not only his character, but his entire business career.

"Mr. Troy Smith: We object to that Argument, Your Honor. There is only an issue of fact here, not any issue of fact as Counsel has stated in regard to the instrument he signed without authority; but it is only as to the ownership of this man's property, the issuance of a policy covering this policy, and—

"The Court: I sustain the objection with reference to his business career, go ahead.

"Now if the Court please, I am not speaking of the part he is talking about, I am speaking of the fact that he has accused this man of taking $250.05 and putting it in his pocket, and not giving that man anything for it.

"The Court: All right, go ahead.

"And I think that that is a reasonable deduction, that it is a serious thing to say about any man, I don't care who he is nor where he comes from.

"Mr. Troy Smith: Your Honor, we object to that, ask that the Court instruct the Jury. It is highly prejudicial, dealing to passion and prejudice, bringing in matters that are entirely outside the record, a man's business and professional career, and all of that.

"The Court: I sustain the objection as to his business career. Otherwise, I overrule your objection. Go ahead.

"Well, that portion of it that may be prejudicial, *I hope it is prejudicial. I hope that the matters that have been brought to you in this case will arouse a prejudice from the testimony in this case to the fact that you will deeply consider those things that are brought into controversy here.* (Emphasis mine.) I am not going to make any talk about it. They have been gone over with you. I will say this, that Mr. Pritchett, every time he made a statement about it made a different one. I will say that. It shows for one thing in here where he says, 'What did you do with that money? Oh, I just traded around in town here.' Didn't know where, but traded around in town, and he came back the very next morning and said he gave $200.00 to his wife, and that's where the money went. You also said that you owned that truck. I will say to you that in Illinois, you signed it Allied Oil Company, not by C. M. Pritchett, but 'C. M. Pritchett, Driver.' Not owner, but driver of the truck. I say that every time you put

your foot down, it was exactly opposite to what you had said before and what the facts in this case show. Now, I know you want to go to lunch. I appreciate the fact that you have given us the attention. I appreciate the fact that I had the opportunity to speak to you in this case. Thank you."

The comment of Mr. Spruiell that, "I hope it is prejudicial," seems to me the argument was intended to be prejudicial. This argument was unjustified as to the absence of the attorney from the court house for such a long period of time, the attorney's personal feelings relative to women serving as jurors, when there were women on the jury, and as to the inferences as to damage to his client's character and business. Apparently, the statement in the argument about the long absence of counsel from the court house referred to an absence because of illness. The attorney's personal feelings relative to women serving as jurors had no place in the argument whatever. The references as to damages to his client's character and business did not pertain to any issue involved in this lawsuit. Unquestionably, the direct comment of the intent of the attorney that the argument be prejudicial, together with a summation of the comments, bring such argument wholly within that character of argument contemplated to be prohibited by the rule of law that prohibits the appeal to passion and prejudice in a jury argument, and it should not be permitted. 41–B Tex.Jur., Sec. 262, and authorities therein cited.

Appellees counter with the proposition that the objections and exceptions to the jury argument have not been properly preserved for consideration on appeal. The foregoing arguments, objections, comments and rulings of the court were brought forward in the statement of facts. The statement of facts was certified to by the official court reporter by an ordinary form of certificate. The certificate of approval by the attorneys in the case reads as follows:

"We, the undersigned Counsel for the parties hereto hereby agree that

the foregoing pages contain a true and correct transcript in question and answer form, of all the testimony and evidence designated by Plaintiff and that designated by Defendant adduced in the trial of the foregoing entitled and numbered cause; and we further agree that the same may be filed in this cause as the Statement of Facts therein, and used as same on the appeal of this case, except that Defendants do not approve of that part of the Statement of Facts appearing on pages 388–391(b), *it being Defendants' contention that such matter does not properly belong in the Statement of Facts, and cannot be used in that manner as Bills of Exception."* (Emphasis mine.)

Appellees do not deny the correctness of the argument nor the fact that the objections were made at the time. They merely disapprove of the method of bringing forward the errors complained of and argue in their exception that the contention of appellees was that the matters complained of did not belong in the statement of facts and can not be used in such manner to raise the point assigned. The counter assignment of error by appellee Agency reads as follows: "The trial court committed no error in ruling on appellant's objections to arguments of counsel and said question is not properly before this court, because bills of exception were not prepared and filed in the manner and time required by the Texas Rules of Civil Procedure." I find the further admission for counsel for appellee, the Agency, as follows: " * * * Otto Simpson was sworn in as one of the plaintiff's witnesses at the trial, was present during the trial and plaintiff's attorney conferred with him on one or more occasions. * * * In his argument, Mr. Lasater commented upon the failure of plaintiff to put Otto Simpson on the witness stand." Then, I find the following admission as to the correctness of the statement of facts, which included the jury argument which admission was made by counsel for appellee, the Agency, "We

do not contend that the Statement of Facts contains any errors * * * *", Appellee HIU adopted the statement, argument and authorities made and cited by the Agency under this point; therefore, it makes the same admissions. It is admitted by attorneys for both appellees that the arguments complained of were made, objections were made thereto, and the court's rulings thereon correctly present what transpired at the time. I think the points have been preserved and comply with the provision of Rules 370, 371, 372 and 373 of V.A.T.R.C.P. At this point, I call attention to some of the provisions of Rule 372. In Rule 372 I find the following:

"(c) All objections to rulings on evidence *or other matters* may be shown in the Statement of Facts without necessity of formal bills of exceptions. * * * *"

"(e) Where the ruling or other action of the court *appears otherwise of record, no bill shall be necessary to reserve an exception thereto."* (Emphasis mine.)

In the case of Smith v. United Gas Pipe Line Co., 149 Tex. 69, 228 S.W.2d 139, 143, the Court held: "We further consider, as stated, that despite Rule 372(c), the proper way to preserve objections to improper argument is by bill of exception rather than by bringing up the court reporter's record of the argument, as a part of or supplement to the statement of facts, described in Rule 371, *unless counsel agree on the latter method."* (Emphasis added.) This holding has been followed in the case of American General Ins. Co. v. Dennis, Tex.Civ. App., 280 S.W.2d 620, no writ history, and Hillin v. Hagler, Tex.Civ.App., 286 S.W.2d 661, no writ history. In the case of Texas Employers' Ins. Ass'n v. Phillips, Tex.Civ. App., 255 S.W.2d 364, wr. ref., n. r. e., the jury argument complained of was brought forward in a complete transcript of the argument made by counsel for appellee which was approved by the trial court and

ordered filed as a bill of exception. The court held that in so doing the requirements of the law had been met. In the case of Hayter Lbr. Co. v. Winder, Tex.Civ.App., 295 S.W.2d 730, wr. dis., the court reporter who prepared the statement of facts also prepared a copy of the argument of counsel for appellee and certified that the copy which he had *attached to* the statement of facts was true and correct as reflected by his notes. The reporter's certificate was the only authentication of the argument complained of; *it was not included in the statement of facts;* and was not approved by counsel for either party, or by the trial judge. The court held, and properly so, that such instrument was not sufficient to preserve the point in the absence of the approval of the same by the trial judge.

The argument complained of in this case *was included in the statement of facts,* was not disapproved as being incorrect, but was only disapproved on the theory that it was an improper way to preserve the points assigned to the jury argument. I am unable to see where any benefit could have been gained by appellees by requiring the matters complained of to have been brought forward in a bill of exception. I think it would have had a tendency to lengthen the record rather than to have shortened the same as contemplated by Rule 371.

There was much evidence and argument in this case about the failure of appellant to file a proof of loss within the period of time prescribed by the policy. The Agency and HIU having attempted to cancel the policy immediately after its issuance and having denied liability immediately after the accident, the filing of a proof of loss was waived. Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43, 173 A.L.R. 968. The Insurance Company having denied liability on the policy prior to the time the settlement of the claim in Illinois was made, was an unconditional denial of liability and also constituted a waiver by appellant within the provisions of the policy requiring notice of suit and the forwarding

of process. Womack v. Allstate Ins. Co., Tex., 296 S.W.2d 233. Further, HIU having failed to comply with Article 21.17 of our Insurance Code, V.A.T.S., by giving notice that it refused to be bound by the contract because of any misrepresentations made in the application for or in obtaining the insurance contract, waived such provisions in the contract. See Womack v. Allstate Ins. Co., supra. Appellee HIU contends that, regardless of the finding of the jury that the public liability policy of insurance was not mailed, that it is not liable in this case because the plaintiff failed to plead and prove that he was legally liable for the injuries and damages for which the settlement was made, and that the settlement he made was reasonable. We are not cited to any Texas authority directly in point on this question, but we do find in 35 C.J.S. Federal Courts § 130, pp. 1072–1073 a well-reasoned rule with which I agree. According to this authority, "where insurer repudiates liability or fails or refused to defend, the insured is released from its agreement not to settle and has a right to make a reasonable settlement of the insured person's claim and recover the amount paid therein * * * where it (the insurer) breaches its contract by denying liability and refusing to defend or settle. And such settlement, in the absence of proof to the contrary, is presumptive evidence of a liability and of the amount thereof." Citing Elliott v. Casualty Ass'n of America, 254 Mich. 282, 236 N.W. 782.

In this cause, under the findings of the jury, the public liability policy issued with HIU was not cancelled and the insurer should have defended. It is undisputed that HIU immediately denied liability on the policy and it would seem most unreasonable, under the facts in this case (especially in view of the nominal figure for which claim was settled and such a great distance from the home of appellant) to require appellant to not only establish liability under the policy but to also require him to plead and prove that he was liable, or that the

settlement was reasonable. It seems to me that this is something that would come in the category of an affirmative defense that should be pleaded and proved by the insurer. If the insurer could plead and prove that a settlement in such cases was unreasonable under the circumstances they would not be held liable. This is in accordance with the rule stated in the above authorities and appears to me to be very sound.

I am unable to understand the position of appellee, HIU, in so diligently endeavoring to prevent the admission of the lost policy receipt and cross-examination of the witness Turner relative thereto. It filed a cross-action against the Agency. Yet, it appears from the record in the case that they are not sincere in their contention for judgment against the Agency for any judgment that might be rendered against it. If it was sincere in its contentions, it would be to the interest of HIU for the lost policy receipt to be admitted in evidence for all purposes. Especially is this true, because it has been held that an insurance company can be held liable for a contract of insurance, even though the policy was not issued. Pacific Fire Ins. Co. v. Donald, Tex.Civ. App., 217 S.W.2d 431, affirmed, Tex., 224 S.W.2d 204.

For the error of the court in the submission of Special Issue No. 28, the judgment of the trial court is reversed and the cause is remanded only on the issue of liability on the public liability and property damage policy.

I dissent as forcefully as I know how from the affirmance of the case as to the fire and collision insurance, because there was evidence enough to support a jury finding that the fire and collision policy was bought and paid for, and Pritchett's position would have been strongly supported if the evidence hereinabove pointed out as being admissible had been admitted; and, the arguments complained of had not been made. I concur in the overruling of all of appellant's points not discussed in the main opinion or the dissent.

On Motion for Rehearing.

CHADICK, Chief Justice, and FANNING, Justice.

Appellees Davis, Turner & Caruthers have filed motion for rehearing asking that the trial court's take-nothing judgment against them be affirmed in its entirety. That being the intention and result of the majority opinions herein, for clarification it is stated that the trial court's take-nothing judgment as to Davis, Turner & Caruthers is affirmed in its entirety.

The motions for rehearing of appellant Pritchett and of appellee Highway Insurance Underwriters are respectfully overruled.

DAVIS, J., dissents.